IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| RICK J. SEEBERGER and SUSAN C. SEEBERGER, <br><br>        Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING LP, PRLAP, INC., BANK OF AMERICA CORPORATION, VENTURES TRUST 2013 I-H-R, and BSI FINANCIAL SERVICES, INC., <br><br>        Defendants, <br> _____ <br><br> VENTURES TRUST 2013 I-H-R, <br><br>        Counter-Plaintiff, <br><br> v. <br><br> RICK J. SEEBERGER and SUSAN C. SEEBERGER, <br><br>        Counter-Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § §  EP-14-CV-366-KC |

## **ORDER**

On this day, the Court considered Plaintiffs' Motion to Disqualify the Firm of James and Haugland for Conflict of Interest ("Motion to Disqualify"), ECF No. 89.  For the reasons set forth herein, Plaintiffs' Motion to Disqualify is **DENIED**.

**I.     BACKGROUND**

    **A.     Procedural Background**

On October 1, 2014, Plaintiffs Rick and Susan Seeberger ("Plaintiffs") filed a Complaint in the above-captioned case alleging that Defendants Bank of America, N.A. and BAC Home Loans Servicing LP committed violations of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, breached their duties of good faith and fair dealing, and committed common law fraud in relation to two mortgages secured against Plaintiffs' real property. *See* Original Compl. 24-26, ECF No. 1. Plaintiffs later filed a First Amended Complaint, adding PRLAP, Inc. and Bank of America Corporation as defendants to the case and asserting additional causes of action against all defendants for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Texas Debt Collection Practices Act, Texas Finance Code § 392.001 *et seq*. *See* Pls.' First Am. Compl. 1, 31-32, ECF No. 10.

On February 20, 2015, Plaintiffs filed their Motion for Leave to File Second Amended Complaint and Join Additional Parties ("Motion for Leave"), ECF No. 46, seeking leave to join Ventures Trust 2013 I-H-R ("Ventures") and BSI Financial ("BSI") as additional parties, and to "combine all related facts, issues, and relevant legal authorities set forth in Plaintiffs' pleadings." *See id.* at 4. The Court granted the Motion for Leave on March 6, 2015.

On April 17, 2015, Ventures and BSI filed an Answer to Plaintiffs' Second Amended Complaint ("Answer"), ECF No. 63. Corey W. Haugland ("Haugland"), an attorney at James & Haugland, P.C. ("J&H") signed the Answer as the attorney for Ventures and BSI. *See* Ventures and BSI's Answer to Pl's Second Am. Compl. 6. On July 17, 2015, Plaintiffs filed their Motion to Disqualify.

B.     **Factual Background**

Plaintiffs' claims in this case arise from events that ensued after Plaintiffs executed two notes on their homestead on December 29, 2003.  *See* First Am. Compl. 6-30.  Plaintiffs allege, among other things, that "Defendants willfully closed Plaintiffs['] mortgage accounts, refused payments being tendered, created a Default under the terms of the . . . promissory notes, deeds of trust and related documents, [and] have sold mortgage *Notes* to Banc of America Mortgage Securities and to [Ventures]."  Second Am. Compl. 4.  Plaintiffs allege a series of actions that Defendant Bank of America took after the notes were executed that damaged the financial wellbeing of Plaintiffs and Plaintiffs' business, Pre-Press Express International, Inc. ("PPEI").  *See* First Am. Compl. 6-30.

On April 24, 2006, PPEI filed for Chapter 7 bankruptcy ("PPEI Bankruptcy").  *See* Mot. to Disqualify Ex. A.  Court records in the bankruptcy case indicate that Wiley France James, III ("James"), an attorney at J&H, represented PPEI.[1]  *See id.*  In fact, on April 21, 2006, Plaintiffs had written a check to J&H in the amount of $1,800, with "PRE-PRESS EXPRESS" written in the memo.  *See id.*  Plaintiffs also filed as creditors in the PPEI Bankruptcy.  *See* Ventures and BSI's Resp. to Pls.' Mot. to Disqualify Ex. D-1, ECF No. 92.

On January 18, 2007, Plaintiffs and James executed a retainer agreement regarding a potential personal Chapter 7 bankruptcy.  *See* Resp. Ex. D-4.  A May 21, 2007, billing statement from J&H to Rick Seeberger included charges in the amount of $3,046.50 for work performed in January 2007.  Mot. to Disqualify Ex. A.  The statement does not indicate that Plaintiffs paid a retainer fee.  *See id.*  The statement does demonstrate, however, that James and another

---

[1] James and Haugland appear to have worked together at J&H during all relevant periods.  *See* Ventures and BSI's Sur-Reply to Pls.' Reply to Ventures and BSI's Resp. to Pls.' Mot. to Disqualify Ex. D-8, ECF No. 102 (stating that James and Haugland have worked together for 33 years).

3

individual ("ZP") spent a total of 18.4 hours between January 12 and January 24, 2007, on work relating to Plaintiffs' potential personal bankruptcy and the PPEI Bankruptcy. *See id*. Several entries refer to both the potential personal Chapter 7 bankruptcy and the PPEI Bankruptcy, while other entries do not clearly refer to one or the other. *See id*. (referring solely to the "Chapter 7 Petition"); *id*. ("1/15/07 Call from Mr. Given regarding Seeberger case . . . . 1/19/07 Review client schedules"). A January 22, 2007, entry indicates that ZP "[r]eviewed e-mail correspondence from Mr. Seeberger regarding stopping work on personal bankruptcy." Mot. to Disqualify Ex. A.

On January 24, 2007, Plaintiffs filed their personal bankruptcy case pro se under Chapter 11 ("Personal Bankruptcy"). *See id*.; Resp. Ex. D-5. In their Pro Se Filing Questionnaire, which Plaintiffs signed the same day, Plaintiffs stated under penalty of perjury that no one assisted them in completing their petition or schedules, and that they had not paid or promised to pay anyone a fee for assisting them in completing their petition or forms. *See* Resp. Ex. D-5.

Court records from their Personal Bankruptcy demonstrate that at some point during the proceeding, Plaintiffs were represented by attorneys from Loeb & Loeb in Los Angeles, CA, and Miranda & Maldonado, P.C. in El Paso, TX. Mot. to Disqualify Ex. A. Plaintiffs also stated in their First Amended Complaint that the firm Beck & Given represented them "[d]uring the course of their Chapter 11 proceeding." First Am. Compl. 13.

On May 21, 2007, the same day James sent Rick Seeberger the above-mentioned J&H billing statement, James also signed a Form B10 as a creditor in Plaintiffs' Personal Bankruptcy, asserting a claim in the amount of $3,046.50 for services performed. Mot. to Disqualify Ex. B.

4

The PPEI Bankruptcy case was terminated on November 8, 2007. *See id*. at Ex. A. On April 22, 2008, Plaintiffs' Personal Bankruptcy was converted from a Chapter 11 to a Chapter 7 bankruptcy. *See id*. The Personal Bankruptcy was later terminated, and on March 26, 2009, it was reopened. *See id*. It was ultimately terminated on April 9, 2010. *See id*.

Plaintiffs allege that "as late as June 5, 2012, . . . [J&H was] still trying to collect on a debt from Plaintiffs for a claim filed by them and then discharged on October 31, 2008 in the Chapter 7 case ." Mot. to Disqualify 6.

## II.     DISCUSSION

### A.      Standard

Federal courts in Texas apply federal law when considering motions to disqualify counsel. *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (citing *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992)). "The Fifth Circuit's approach to ethical issues has remained 'sensitive to preventing conflicts of interest.'" *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *In re American Airlines, Inc.*, 972 F.2d at 611). At the same time, "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995). Thus, in recognizing "the severity of disqualification, we do not apply disqualification rules 'mechanically,' but we consider '[a]ll of the facts particular to [the] case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights.'" *In re ProEducation Intern., Inc.*, 587 F.3d at 300 (quoting *U.S. Fire Ins. Co.*, 50 F.3d at 1314).

When considering a motion to disqualify, courts begin by looking to their own local rules. *Id.* at 299. Under the Local Rules of the Western District of Texas ("Local Rules"), the Court has adopted the standards set out in the Texas Disciplinary Rules of Professional Conduct ("Texas Rules"). Local Court Rule AT-7(a). The Local Rules also indicate that the Texas Rules are "not exhaustive of the standards of professional conduct" and that courts should consult the American Bar Association's Model Rules of Professional Conduct ("Model Rules") "[f]or matters not covered by the Texas [R]ules." Local Court Rule AT-7(a). Accordingly, the Court will consider the Texas Rules and the Model Rules in conjunction.

### B. Disqualification Arising from Duties to Former Clients

Plaintiffs invoke Texas Rule 1.09 and Model Rule 1.9 in support of their argument that opposing counsel, Haugland, should be disqualified from representing Ventures and BSI. Mot. to Disqualify 1. Plaintiffs argue that J&H previously represented them in the PPEI Bankruptcy and the Personal Bankruptcy, and that because those cases are "substantially related" to the instant case, J&H must be disqualified. Mot. to Disqualify 2.

The gist of Plaintiffs' argument is that actions of Defendant Bank of America caused Plaintiffs and PPEI to file for bankruptcy, and that because J&H represented Plaintiffs in both bankruptcies, J&H is aware of information about Plaintiffs that would be relevant to Defendants' defenses in the present suit. *Id.* at 5. Plaintiffs argue that they have established a substantial relationship "between the preparation of its schedules in January 2007 and its claims against the Defendants in this case" because (1) "[t]he facts and causes of action alleged by Plaintiffs in this case are based upon actions taken by Bank of America between 2005 and 2014"; (2) "[t]o the extent Plaintiffs have shown that Ventures and BSI in purchasing the note and/or deed of trust

6

from Bank of America are subject to all the defenses of the original note and deed"; and (3) J&H "represented Plaintiffs during a crucial period of time and have knowledge that other counsel may not have pursued or been privy to." Pls.' Reply to Ventures and BSI's Resp. to Pls.' Mot. to Disqualify, ECF No. 95.

Plaintiffs argue that the facts involved in the present and prior cases are substantially related because "the causes contributing directly to the [PPEI] and Plaintiffs['] bankruptcies may be a focal point of the Plaintiffs['] playbook." Mot. to Disqualify 4. Plaintiffs also claim that J&H has "acquired information which may be confidential and protected by attorney-client privilege and therefore would have a conflict of interest in representing their current clients." *Id*. Plaintiffs elaborate that from April 2006 through January 2007, J&H "received privileged knowledge of the facts directly related to the actions and/or breaches by Defendants . . . in relation to Plaintiffs and provided legal advice to Plaintiffs directly related to the . . . Defendants['] actions and breaches." *Id*. According to Plaintiffs, "[t]herefore, the material factual similarities between the current and the former representation are the same." *Id*. at 4-5.

In support of their argument that "[t]here are similarities between the core legal questions posed" in the present representation and the prior representations, Plaintiffs direct the Court's attention to the legal claims asserted in Plaintiffs' Second Amended Complaint in the present case. *Id*. at 5. Plaintiffs claim J&H "had full knowledge" of these claims "and provided legal advice to Plaintiffs." *Id*.

    **1.  Plaintiffs have failed to demonstrate a conflict of interest based upon J&H's alleged former representation of them**

Texas Rule 1.09(a)(3) prohibits "a lawyer who personally has formerly represented a client in a matter [from] thereafter represent[ing] another person in a matter adverse to the

former client . . . if it is the same or a substantially related matter." Tex. Disciplinary R. Prof'l Conduct 1.09(a)(3), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2015). Similarly, Model Rule 1.9(a) prohibits "[a] lawyer who has formerly represented a client in a matter [from] thereafter represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Model Rules of Prof'l Conduct r. 1.9(a). Texas Rule 1.09(b) explains that if one attorney has a conflict under 1.09(a), the conflict is imputed to all the members of the attorney's firm. *See* Tex. Disciplinary R. Prof'l Conduct 1.09(b);1.09(a) cmt. 7; *In re ProEducation Intern, Inc.*, 587 F.3d at 300. The Model Rules have an identical rule regarding conflict imputation. *See* Model Rules of Prof'l Conduct r. 1.10(a). While Texas Rule 1.09 and Model Rule 1.9 have some linguistic differences, they are "identical . . . in all important respects." *In re Am. Airlines, Inc.*, 972 F.2d at 615 n.2.

Texas Rule 1.09 adopted the common law "substantial relationship" test in determining what constitutes a "same or a substantially related matter." *See id*. at 617. Under the "substantial relationship" test, the party seeking disqualification must establish "1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *Id*. at 614.

          a.        **Plaintiffs have failed to establish an attorney-client relationship with J&H arising from either the PPEI Bankruptcy or the Personal Bankruptcy**

Plaintiffs argue that J&H represented them in the PPEI Bankruptcy and in the Personal Bankruptcy. An attorney-client relationship can be created "either explicitly or implicitly by

conduct manifesting an intention to create the attorney-client relationship." *City of El Paso v. Salas-Porras Soule*, 6 F. Supp. 2d 616, 622 (W.D. Tex. 1998). *See also Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 (Tex. App. 1991) ("[T]he [attorney-client] relationship does not depend upon the payment of a fee . . . ."). When an organization employs or retains a lawyer, the resulting attorney-client relationship is between the lawyer and the organization. Tex. Disciplinary R. Prof'l Conduct r. 1.12; Model Rules of Prof'l Conduct r. 1.13. Furthermore, in a bankruptcy proceeding, an attorney may not simultaneously represent both creditor and debtor. *In re Delta Produce, LP*, 521 B.R. 576, 598 (W.D. Tex. 2014) (quoting *In re Wilde Horse Enters.*, 136 B.R. 830, 843 (Bankr. C.D. Cal 1991)).

Plaintiffs cannot establish an attorney-client relationship with James based on the PPEI Bankruptcy. While Plaintiffs point out that they wrote a check for $1,800 to J&H, the check indicates that this was for the PPEI Bankruptcy, and not for the personal representation of Plaintiffs. *See* Mot. to Disqualify Ex. A. James represented PPEI as an entity in its bankruptcy proceeding, and therefore PPEI was James's client. *See* Tex. Disciplinary R. Prof'l Conduct 1.12; Model Rules of Prof'l Conduct r. 1.13. Furthermore, because Plaintiffs were creditors in the PPEI Bankruptcy, *see* Resp. Ex. D-1, J&H could not have represented both PPEI and Plaintiffs in that matter. *See In re Delta Produce, LP*, 521 B.R. at 598. Thus, Plaintiffs cannot establish an attorney-client relationship with James based on the PPEI Bankruptcy because James represented only PPEI.

Plaintiffs also cannot establish an attorney-client relationship with J&H based on the Personal Bankruptcy. Plaintiffs point out that J&H billed them $3,046.50 for 18.4 hours of work performed in January 2007, that J&H filed as a creditor in Plaintiffs' Personal Bankruptcy, and

that as late as June 5, 2012, J&H was trying to collect on a debt from them; therefore, Plaintiffs assert they established an attorney-client relationship with J&H in the Personal Bankruptcy. Mot. to Disqualify 2, 6. *See also id*. Ex. A-B.  The Court notes, however, that it is unclear precisely how much of the 18.4 hours over the course of the twelve days in January were spent on the PPEI Bankruptcy as opposed to Plaintiffs' yet-to-be-filed Personal Bankruptcy. *See id*. Ex. A.  Furthermore, while Plaintiffs and James executed a retainer agreement, it appears Plaintiffs did not pay the retainer fee, *see id*., supporting the notion that Plaintiffs did not manifest an intention to enter into an attorney-client relationship with J&H.

  Although the existence of an attorney-client relationship does not depend exclusively upon payment of a fee, *Perez v. Kirk & Carrigan*, 822 S.W.2d at 265, additional facts lead the Court to conclude that Plaintiffs' conduct did not manifest an intention to enter into an attorney-client relationship with J&H.  For example, Plaintiffs' own evidence shows that Plaintiffs apparently contacted James about stopping work on their potential personal bankruptcy four days after signing the retainer agreement. *See* Mot. to Disqualify Ex. A.  In fact, on January 24, 2007, two days after Rick Seeberger apparently indicated to J&H that it should stop working on the potential personal bankruptcy, Plaintiffs filed their own Personal Bankruptcy pro se, declaring under penalty of perjury that they received no assistance and did not promise anyone a fee for work performed. *See* Resp. Ex. D-5.  The Court finds it persuasive that court records from Plaintiffs' Personal Bankruptcy indicate that Plaintiffs were, at some point during the proceeding, represented by lawyers from firms other than J&H, while J&H is absent from these same court documents. *See* Mot. to Disqualify Ex. A.  Additionally, Plaintiffs stated in their First Amended Complaint that they were represented by Beck & Given during their Personal

Bankruptcy proceeding, yet Plaintiffs made no mention of being represented by anyone from J&H until they filed their present Motion to Disqualify. *See* First. Am. Compl. 13. Thus, the Court holds that Plaintiffs have failed to establish the existence of an attorney-client relationship with J&H based on either the PPEI Bankruptcy or their Personal Bankruptcy.

### b. Plaintiffs have failed to demonstrate a substantial relationship between the present case and the bankruptcy cases

Although Plaintiffs have not established an attorney-client relationship with J&H, even assuming such a relationship existed, Plaintiffs have not met their burden of establishing a substantial relationship between the present and prior representations.[2]

The party seeking disqualification bears the burden of proving that the present and prior representations are substantially related. *In re Am. Airlines, Inc.*, 972 F.2d at 614; *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir. 1981). The court should focus its inquiry "on the precise nature of the relationship between the present and former representations." *Duncan*, 646 F.2d at 1029. Thus, "[o]nly when the moving party delineates with specificity the subject matters, issues, and causes of action presented in the former representation can the district court determine if the substantial relationship test has been met." *Id*. "Merely pointing to a superficial resemblance between the present and prior representations" will not suffice. *Id*. The moving party will fail to meet its burden when it "makes no attempt to describe the precise issues involved in [the prior case] or to relate those issues to questions raised in [the present case]." *Id*.

---

[2] The Court notes that even if Haugland did not personally represent Plaintiffs in either the PPEI Bankruptcy or the Personal Bankruptcy, any conflict James has based on these representations would be imputed to Haugland because both James and Haugland worked at the same firm during all relevant times. *See supra* note 1; Tex. Disciplinary R. Prof'l Conduct 1.09(b); Model Rules of Prof'l Conduct r. 1.10(a). Additionally, while Plaintiffs allege for the first time in their Reply that Haugland personally represented them, Plaintiffs have provided no evidence to support this allegation. *See generally* Reply. Nonetheless, the Court does not differentiate between James and Haugland's conflicts because any conflict that one might have would be imputed to the other in this matter.

Plaintiffs have not met their burden of "delineat[ing] with specificity the subject matters, issues, and causes of action presented in the former representation," nor have they "describe[d] the precise issues involved in [the prior cases] or . . . relate[d] those issues to questions raised in [the present case]." *Id*. Instead, Plaintiffs make vague assertions that J&H is aware of information relevant to Defendants' defenses in the present suit, that "the causes contributing directly to the [PPEI] and Plaintiffs['] bankruptcies may be a focal point of the Plaintiffs['] playbook," and that J&H "received privileged knowledge of the facts directly related to the actions and/or breaches by Defendants . . . in relation to Plaintiffs and provided legal advice to Plaintiffs directly related to the Bank Defendants['] actions and breaches." Mot. to Disqualify 4. Plaintiffs circularly state, without any degree of particularity, and in a conclusory fashion, that "the material factual similarities between the current and the former representations are the same." *Id*. at 4-5.

In support of their argument that "[t]here are similarities between the core legal questions posed" in the present and prior cases, Plaintiffs merely restate the legal claims in their Second Amended Complaint in the present case, without relating them to legal or subject matter issues involved in the bankruptcy cases. *Id*. at 5. *See also* Reply 2-3 (listing questions and asserting J&H is "dealing with the same legal questions today in this case as they did in the prior representation," without explaining how any of the questions pertain to the respective representations). As a result, the Court is left to speculate as to the "precise nature of the relationship between the present and former representations." *See Duncan*, 646 F.2d at 1029. Accordingly, because Plaintiffs have failed to specifically delineate the "subject matters, issues,

and causes of action" in the bankruptcy cases and in the present case, they have failed to meet their burden of proving that the prior and present cases are substantially related. *See id.*[3]

### 2. Plaintiffs have failed to demonstrate that J&H's representation of Ventures and BSI involves a reasonable probability that J&H will violate a rule of confidentiality

Texas Rule 1.09(a)(2) prohibits "a lawyer who personally has formerly represented a client in a matter [from] thereafter represent[ing] another person in a matter adverse to the former client . . . if the representation in reasonable probability will involve a violation of Rule 1.05 [Confidentiality of Information]." Tex. Disciplinary R. Prof'l Conduct 1.09(a)(2). Rule 1.05, in turn, prohibits lawyers from, among other things, "[using] confidential information of a former client to the disadvantage of the former client after the representation is concluded." *Id.* 1.05(b)(3). Confidential information includes both privileged and unpriveleged information.

---

[3] Plaintiffs also invoke Texas Rule 1.09, Comment 4A in their argument that J&H "previously acquired information which may be confidential and protected by attorney-client privilege and therefore would have a conflict of interest in representing their current clients." Mot. to Disqualify 4.

> Comment 4A states:
> The "same" matter aspect of this prohibition prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer. The prohibition applies when an actual attorney-client relationship was established even if the lawyer withdrew from the representation before the client had disclosed any confidential information.

Tex. Disciplinary R. Prof'l Conduct 1.09 cmt. 4.

This comment, however, is inapposite to the facts of the present case. J&H did not "switch sides" in the Personal Bankruptcy after Plaintiffs approached J&H about representing them by representing Plaintiffs' creditors instead, nor do Plaintiffs appear to allege as much. *Contra In re Gerry*, 173 S.W.3d 901, 902, 904 (Tex. App. 2005) (invoking Comment 4A where wife consulted with an attorney about possible legal representation in a divorce action, and husband later attempted to hire an attorney from the same firm to represent him in the same divorce action); *In re Roseland Oil & Gas, Inc.*, 68 S.W.3d 784, 788 (Tex. App. 2001) (noting that pursuant to Texas Rule 1.09, Comment 4A, "[t]he 'same' matter generally prohibits an attorney from switching sides in a lawsuit and representing another whose interests are in conflict with those of the former client"). Instead, Plaintiffs allege that J&H represented them in *prior* bankruptcy cases, and that based on those prior representations, J&H should be disqualified from the present case. *See* Mot. to Disqualify 2, 5-6. Accordingly, Plaintiffs have failed to establish Texas Rule 1.09, Comment 4 as a basis for disqualifying J&H as counsel for Ventures and BSI.

To the extent Plaintiffs are reiterating, by reference to Comment 4, their concern that J&H acquired confidential information in the bankruptcy cases that may be used against them in the present case, the Court addresses that concern below with regard to Texas Rule 1.09(a)(2).

13

Tex. Disciplinary R. Prof'l Conduct 1.05(a).  Unprivileged information includes "all information relating to a client or furnished by the client . . . acquired by the lawyer during the course of or by reason of the representation of the client."  *Id*.  If an attorney has a conflict under 1.09(a)(2), it is imputed to the members of the attorney's firm.  *See id*. at 1.09(b); *id*. at 1.09(b) cmt. 7; *In re ProEducation Intern, Inc.*, 587 F.3d at 300.  Likewise, Model Rule 1.9(b) prevents "[a] lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter [from] thereafter: . . . (1) us[ing] information relating to the representation to the disadvantage of the former client . . . or (2) reveal[ing] information relating to the representation ."  Model Rules of Prof'l Conduct r. 1.9(b).  Texas Rule 1.09(a)(2) and Model Rule 1.9(b) are "identical . . . in all important respects."  *In re Am. Airlines, Inc.*, 972 F.2d at 615 n.2.

Comment 4 explains that whether there is a "reasonable probability" that the representation will involve a violation of Rule 1.05 is a question of fact.  Tex. Disciplinary R. Prof'l Conduct 1.09 cmt. 4.  The movant can demonstrate this probability by "pointing to specific instances" where it revealed confidential information to opposing counsel, and by explaining how that information is relevant to the present matter.  *Duncan*, 646 F.2d at 1032.  *See also id*. ("Merrill Lynch cannot have Smathers & Thompson disqualified simply by stating that the firm has knowledge of Merrill Lynch's 'practices and procedures.'  Instead, it must prove that Smathers & Thompson has knowledge of the particular practices and procedures which are the subject matter of [the] suit."); *id*. at 1031 (analyzing how in one case, the moving party succeeded on a disqualification motion "by specifying the kinds of confidential information that it had revealed to its former counsel and by describing how that information related to the

matters raised in [the present suit]"). A court may also consider the length and nature of the lawyer's previous representation of the former client in determining whether the attorney possesses confidential information. *See id*. at 1032 (noting firm's claims that "it has never been general counsel to its former client but instead has represented [the former client] in a limited number of local matters and only for the duration of each matter . . . . [and i]t has not had . . . [a] pervasive, day-to-day relationship with its client").

Plaintiffs have failed to establish a reasonable probability that J&H's representation of Ventures and BSI will result in a breach of confidentiality owed to Plaintiffs based on J&H's alleged representation of Plaintiffs in the Personal Bankruptcy.[4] Instead of "pointing to specific instances" where Plaintiffs revealed confidential information to J&H, Plaintiffs make vague allegations that J&H "represented Plaintiffs during a crucial period of time and have knowledge that other counsel may not have pursued or been privy to," that J&H has "acquired information which may be confidential and protected by attorney-client privilege," and that J&H "received privileged knowledge of the facts directly related to the actions and/or breaches by Defendants . . . in relation to Plaintiffs and provided legal advice to Plaintiffs directly related to the Bank Defendants['] actions and breaches." Mot. to Disqualify 4. Furthermore, only four days elapsed from the time Plaintiffs and James signed a retainer agreement in contemplation of a personal bankruptcy filing to the time Plaintiffs apparently told J&H to stop working on the case. *See* Resp. Ex. D-4; Mot. to Disqualify Ex. A. Shortly thereafter, Plaintiffs filed for bankruptcy, declaring under penalty of perjury that they received no assistance in filing their pro se Personal Bankruptcy. Resp. Ex. D-4.

---

[4] For purposes of analysis, the Court assumes that James represented Plaintiffs in their Personal Bankruptcy. The Court again does not differentiate between James and Haugland's conflicts, because any conflict James may have as a result of representing Plaintiffs would be imputed to Haugland. *See supra* note 2.

In light of these facts, the Court is not in a position to conclude that Plaintiffs provided J&H with confidential information. *See Duncan*, 646 F.2d at 1032. Even had Plaintiffs demonstrated that they provided J&H with confidential information, Plaintiffs fail to explain how any confidential information provided is relevant to the precise issues in the case at hand. *See id*. at 1031-32.

Plaintiffs have failed to demonstrate a substantial relationship between their prior bankruptcy cases and the present case, and have failed to demonstrate that J&H's representation of Ventures and BSI poses a reasonable probability that J&H will violate a duty of confidentiality owed to Plaintiffs. Accordingly, Plaintiffs have failed to establish a ground for disqualifying J&H based on duties owed to Plaintiffs as former clients.[5]

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Disqualify, ECF No. 89, is **DENIED**.

**SO ORDERED.**

SIGNED this 6th day of October, 2015.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs also cite *In re Basco*, 221 S.W.3d 637, 638-39 (Tex. 2007) in support of their argument that J&H should be disqualified due to a conflict of interest. *In re Basco*, however, addressed a situation in which a party seeks to disqualify opposing counsel, because opposing counsel would be required to question the work product of his former law partner in the course of the present representation. *See id*. at 638. Thus, it is not apparent how *In re Basco* is apposite to the facts of the case at hand.