IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RICK J. SEEBERGER AND SUSAN C. SEEBERGER, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, LP, PRLAP, INC., BANK OF AMERICA CORPORATION, VENTURES TRUST 2013 I.H.R., AND BSI FINANCIAL SERVICES, INC., | § § § § § § § | |
| Defendants, | § § | |
| _____ | § | EP-14-CV-366-KC |
| VENTURES TRUST 2013 I.H.R., | § § | |
| Counter-Plaintiff, | § § | |
| v. | § § | |
| RICK J. SEEBERGER AND SUSAN C. SEEBERGER, | § § § | |
| Counter-Defendants. | § § | |

**<u>ORDER</u>**

On this day, the Court considered Defendants' Motion to Dismiss the Second Amended

Complaint and Brief in Support ("Motion to Dismiss"), ECF No. 84, Plaintiffs' Motion for

Judgment or to Rule on Plaintiffs' Motion for Reconsideration ("Motion for Judgment"), ECF

No. 101, Plaintiffs' Motion for Partial Summary Judgment ("New Motion for Partial Summary

Judgment"), ECF No. 112, Defendants' Motions to Strike Plaintiffs' Motion for Partial Summary

Judgment (collectively, "Motions to Strike"), ECF No. 114 and ECF No. 117, and Plaintiffs'

Reply and Objection to Defendants' Motions to Strike ("Reply and Objection"), ECF No. 118.

For the reasons set forth herein, Defendants' Motion to Dismiss is **GRANTED**, Plaintiffs'

Motion for Judgment is **DENIED**, Plaintiffs' New Motion for Partial Summary Judgment is

**DENIED** as moot, Defendants' Motions to Strike are **DENIED** as moot, and Plaintiffs' Reply

and Objection is **DENIED** as moot.

## I.      BACKGROUND

### A.      Procedural Background

This case arises from events surrounding various loans secured against a homestead

property located at 6767 Gato Road, El Paso, Texas 79932 (the "Property").  *See* Second Am.

Compl. ("SAC") ¶ 12, ECF No. 51.  Plaintiffs Rick and Susan Seeberger ("Plaintiffs") filed their

original complaint ("Complaint") in this Court on October 1, 2014.  *See* Compl., ECF No. 1.  In

their Complaint, Plaintiffs alleged that Defendants Bank of America, N.A. ("BANA") and BAC

Home Loans Servicing, LP ("BAC") committed violations of the federal Truth in Lending Act

("TILA"), 15 U.S.C. § 1601 *et seq*., breached their duties of good faith and fair dealing, and

committed common law fraud in relation to two notes secured against Plaintiffs' real property.[1]

*See* Compl. 24-26.

Plaintiffs later filed a First Amended Complaint ("FAC"), adding PRLAP, Inc.

("PRLAP") and Bank of America Corporation ("BOA") to the case as Defendants and asserting

additional causes of action against all Defendants for violations of the federal Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Texas Fair Debt

Collection Practices Act ("TDCA"), Tex. Fin. Code section 392.001 *et seq.  See* FAC ¶¶ 1, 31-

---

[1] This case has a lengthy procedural history, *see, e.g.*, Order, ECF No. 83, and Plaintiffs have been involved in at least three other related cases in this Court, as well as a related case in the United States Bankruptcy Court for the Western District of Texas, *see* Notice of Rel. Cases, ECF No. 15.  Thus, the Court does not provide an exhaustive review of the litigation or procedural history, and instead, addresses only the relevant motions and facts.

32, ECF No. 10.  Plaintiffs filed a Second Amended Complaint ("SAC"), which became the

active complaint in the case on March 6, 2015.  *See* SAC.  The SAC added as Defendants

Ventures Trust 2013 I.H.R. ("Ventures") and BSI Financial Services, Inc. ("BSI"), and

ultimately alleged violations of TILA, TDCA, FDCPA, and Texas contract law, as well as breach

of the duty of good faith and fair dealing, and common law fraud.  *See* SAC 5, 10, 15, 18, 20.

Defendants BANA, BAC, PRLAP, and BOA filed a Motion to Dismiss the SAC on June 30,

2015.  *See* Mot. to Dismiss.

### B.    Factual Background

The SAC is disjointed and convoluted, however the Court has been able to discern the

following facts relevant to its resolution of the instant Motion to Dismiss:[2]

On December 29, 2003, Plaintiffs obtained a Texas Home Equity loan in the amount of

$261,418.00 ("First Loan"), and executed an accompanying note ("First Note") that was secured

by a Homestead Lien Contract and Deed of Trust naming BANA as the lender and PRLAP as the

---

[2] Plaintiffs generally fail to differentiate among Defendants when stating claims; the Court therefore construes the undifferentiated claims as if they are asserted against all Defendants.  *See Spencer v. Hughes Watters Askanse, LLP*, Civil Action No. 5:15-cv-00233, 2015 WL 3507117, at *5 (W.D. Tex. June 3, 2015) (construing counts in plaintiff's petition as asserted against all parties because plaintiff failed to differentiate among defendants when stating claims).

Furthermore, while only BANA, BAC, BOA, and PRLAP filed the Motion to Dismiss, *see* Mot. to Dismiss 1, the Court construes the challenges to Plaintiffs' SAC as alleged by all Defendants.  The Court does so because (1) Plaintiffs had an opportunity and did respond to the present Motion to Dismiss; (2) Plaintiffs' claims are broadly alleged against all Defendants and to the extent they are not, the Court construes them as such; and (3) as discussed in more detail below, Plaintiffs have already amended their Complaint twice and alleged their best case.  *See, e.g.*, *Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 352 (5th Cir. 2011) (affirming district court's sua sponte dismissal of plaintiff's claim as fair because plaintiff already had multiple opportunities to amend and had opportunity to allege its best case); *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (explaining a district court's inherent authority to dismiss a complaint sua sponte when the party has notice of the court's intention to dismiss and has had an opportunity to respond, or when the plaintiff has alleged his best case and "dismissal [is] otherwise proper"); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1357 (3d ed.) ("Even if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

trustee.  *See* FAC ¶ 16.[3]  That same day, Plaintiffs obtained another Texas Home Equity loan in the amount of $278,261.27 ("Second Loan"), and executed an accompanying note ("Second Note") that was secured by a Deed of Trust naming BANA as the lender and PRLAP as the trustee.  *Id*. ¶ 17.

Plaintiffs ordered a Property Securitization Analysis Report ("Securitization Report"), which indicated that on or about January 29, 2004, BOA split the First Note from its Homestead Lien Contract and Deed of Trust, and the Second Note from its Deed of Trust.  SAC ¶ 18(a)(ii).  The Securitization Report also indicated that "BOA . . . either sold, transferred, assigned and securitized" the First and Second Notes.  *Id*.; FAC ¶ 19.

On January 29, 2004, BOA also refinanced Plaintiffs' First and Second Notes.  *See* FAC ¶ 22(a).  The First Note was refinanced in the amount of $319,000.00 and the Second Note was refinanced in the amount of $263,385.16.  *Id*. ¶ 20.  According to Plaintiffs, the Mortgage Electronic Registration Systems (MERS) showed that BANA's branch personnel "handled the documents" in connection with the First and Second Note refinancing or renewal, without notifying Plaintiffs of the securitization of the Notes.  SAC ¶ 35(b).

PRLAP knew "that residential mortgage-backed securities . . . trusts held [a] substantial number of sub-standard loans."  *Id*.  Moreover, according to Plaintiffs, "PRLAP failed to invoke [its] rights in order to force loan originators and bond issuers to buy back these [residential mortgage-backed securities]."  *Id*.

---

[3] The SAC cites and "reallege[s] and reincorporate[s] by reference" myriad paragraphs of the FAC.  *See generally* SAC 5-22.  The Court makes no decision as to whether the portions of the FAC Plaintiffs cite in their SAC have been properly incorporated.  *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006) ("The Federal Rules of Civil Procedure specifically allow for incorporation by reference in supplemental pleadings."); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").  Rather, out of an abundance of caution, the Court proceeds by including all claims from the FAC that have been mentioned in the SAC, to the greatest extent possible given the state of the pleadings.

In late 2005, BOA transferred Plaintiffs' accounts to BOA's "Premier Banking Division." *Id.* ¶ 36(b).  On or about November 2, 2005, the Vice President of the Premier Banking Division in El Paso, Texas, informed Plaintiffs that their accounts were being transferred because they "had been loyal and quality customers."  *Id.*

### 1.        The Gato Loan

In late 2005, Plaintiffs applied to refinance the Property so they could "complete construction on additional office facilities on the property and . . . expand business operations." FAC ¶¶ 22-22(a).  The First and Second Notes were to be refinanced under this plan (the "Gato Loan").  *Id.* ¶ 22(a).

The Premier Banking Division led "Plaintiffs to believe the [Gato Loan] was a 'for sure' deal."  *Id.* ¶ 25.  However, "[t]he [Gato Loan] was never funded and BOA did not fulfill its commitment to refinance the [First and Second] Notes as promised."  *Id.* ¶ 24.  BOA never explained its reasons for not funding the Gato Loan.  *Id.* ¶ 25.

According to Plaintiffs, BOA's failure to fund the Gato Loan contributed to "catastrophic financial losses for Plaintiffs, delays in construction, and extreme inconvenience for employees who could not work in suitable facilities."  *Id.* ¶ 24.

### 2.        The "Budget Fitter Program"

In June 2006, Plaintiffs "took advantage of an offer from BOA referred to as the 'Budget Fitter Program.'"  *Id.* ¶ 28.  Plaintiffs state that under this offer, BOA encouraged and permitted them "to skip one payment on each of their mortgage accounts," whereupon the skipped payment would "be added to the end of the mortgage term."  *Id.*; SAC ¶ 95.  Plaintiffs state that "[t]o the best of [their] knowledge, they complied with [the program] and were led to believe these payments would be added to the end of the loan term."  FAC ¶ 28.  Plaintiffs took advantage of

the offer to use the Budget Fitter Program "in lieu of tendering payments for the month of June 2006." SAC ¶ 30(b).

Plaintiffs assert, however, that BOA "never posted the transactions correctly to the [Plaintiffs'] accounts," which resulted in "BOA show[ing] Plaintiffs one month behind in each of their mortgage accounts." FAC ¶ 28. This caused Plaintiffs to be subject to late fees and additional charges for over six months. *Id*. Subsequently, Defendants "threatened to foreclose." *Id*. ¶ 95.

### 3.      Plaintiffs' bankruptcy proceedings

On January 24, 2007, Plaintiffs filed for Chapter 11 bankruptcy. *Id*. ¶ 29. During Plaintiffs' Chapter 11 bankruptcy proceeding, their lawyer "attempted multiple times to reach a settlement with BOA concerning the administrative error, associated late fees and penalties assessed by Defendants." *Id*. ¶ 31. Plaintiffs' lawyer was unable to reach an agreement with BOA regarding the mortgage arrearages. *Id*.

In their proposed Chapter 11 Plan of Reorganization, Plaintiffs "requested the arrearages be added to the end of the loans as was called for in the [Budget Fitter Program]," but did not reach an agreement with BOA. *Id*. Plaintiffs' proposed Chapter 11 Plan of Reorganization "provided that the Plaintiffs would get/stay current with BOA with a waiver of penalties and interest," however the Bankruptcy Court did not confirm the Plan of Reorganization. *Id*. ¶¶ 33-34.

On the same day Plaintiffs filed for bankruptcy, BOA also informed Plaintiffs that they were in arrears one month on the accounts associated with the First Note and Second Note, due to Defendants' administrative errors. *Id*. ¶ 29.

On April 22, 2008, Plaintiffs converted their Chapter 11 bankruptcy to a Chapter 7 bankruptcy.  *Id.* ¶ 35.  At that time, "BOA showed Plaintiffs in arrears on their mortgages" in the amount of $3,058.40 for the First Note and $2,686.58 for the Second Note.  *Id.* ¶ 35(a).  Plaintiffs state that "if BOA had handled the administrative process related to the [Budget Fitter Program] properly, Plaintiffs would not have been in arrears and late fees and penalties would not have been assessed."  *Id.*

Plaintiffs further state that "Defendants failed to provide an adequate reaffirmation agreement to Plaintiffs" during their Chapter 7 bankruptcy.  SAC ¶ 27.

### 4.  Closure of Plaintiffs' accounts

Plaintiffs allege that throughout their bankruptcy proceedings and until June 2008, they made timely payments to BOA.  FAC ¶ 36.  On June 5, 2008, BOA accepted a $2,686.58 payment for the Second Note.  *Id.*  However, Plaintiffs allege that on or about June 19, 2008, "BANA's branch teller personnel" at a BANA location in El Paso, Texas, "ceased accepting payments tendered by Plaintiffs made in a timely manner," SAC ¶ 19, informing Plaintiff Susan Seeberger that Plaintiffs' "mortgage accounts had been closed and payments would no longer be accepted," FAC ¶ 36.  According to Plaintiffs' Credit Bureau Reports, their mortgage accounts were closed in August 2008.  SAC ¶ 19.  From then on, BOA refused to accept payments for the First or Second Notes "even though timely and properly tendered to BOA."  FAC ¶ 36; *see* SAC ¶ 95.  Plaintiffs state that BOA's actions are contrary to the terms of the Notes.  SAC ¶ 33.

On August 29, 2008, Plaintiffs state that BOA sent them communications "in the form of [a] NOTICE OF DEFAULT, DEMAND FOR PAYMENT AND INTENTION TO ACCELERATE."  FAC ¶ 37.

Plaintiffs' lawyer contacted BOA's attorneys over a period of several months, requesting an explanation as to why the mortgage accounts were closed, and seeking "to resolve the matter and to allow Plaintiffs to continue making mortgage payments." *Id*. ¶ 39.  BOA did not respond and never explained why they refused Plaintiffs' mortgage payments. *Id*. ¶¶ 38, 39.  As a result, Plaintiffs assert that they have experienced pain and suffering, that their "careers have been irreparably damaged," and that Plaintiff Rick Seeberger has endured "depression, pain, suffering, and anxiety, for which he is still under a doctor's care." *Id*. ¶ 39.

Plaintiffs state that thereafter, "Defendants failed to file suit or complete a foreclosure sale." SAC ¶ 30(c)(i).

### 5. Attempts to modify the Notes

#### a. "Letter Agreement" to modify the Second Note

Plaintiffs received a letter from BOA, dated September 17, 2008 ("Letter Agreement"), "constituting an offer to modify" their Second Note.  FAC ¶ 40.  Plaintiffs state that they "communicated verbally and in written correspondence that the [Letter Agreement] would have to include certain provisions or terms consistent with their unique situation." *Id*.  Plaintiffs prepared a letter on September 27, 2008 ("September 27 Letter"), "addressing the issue of late fees and penalties resulting from the failure to properly acknowledge the [Budget Fitter Program]," and requiring BOA "to correct any derogatory entries on the Plaintiffs' credit reports." *Id*. ¶ 41.  Plaintiffs returned their September 27 Letter along with the Letter Agreement to BOA.  *Id*.

According to Plaintiffs, "[b]oth parties signed the Letter Agreement with the provisions 'based on the terms set forth in [the September 27 Letter] contemporaneously tendered with the [Letter Agreement].'" *Id*. ¶ 40.

### b.    "Repayment Agreement" to modify the First Note

A separate "Repayment Agreement" was issued with respect to the First Note. *Id*. ¶ 43. According to Plaintiffs, BOA subsequently sent them correspondence "thank[ing] Plaintiffs for bringing their loan current" and requesting certain documents to be returned to BOA within forty-eight hours. *Id*. Plaintiffs assert that this correspondence also requested that they include with the signed agreement a forbearance down payment in the amount of $6,116.80. *Id*. The BOA correspondence also included a payment schedule, as well as a "terms and conditions of repayment agreement" that had been discussed with Plaintiffs. *Id*.

Plaintiffs assert that they "timely executed and returned" the terms and conditions of repayment agreement, but included "a notation next to the signature line demanding" that the agreement be subject to the terms in their September 27 Letter. *Id*. ¶ 44. Plaintiffs state that they sent the $6,116.80 forbearance down payment and that "BOA accepted the payment." *Id*. ¶ 45.

According to Plaintiffs, BOA deposited the down payment "prior to the agreed upon date after BOA had represented it would not do so," causing Plaintiffs "embarrassment and extra fees." *Id*. ¶ 46.

Plaintiffs assert that "[a]fter going through the process to *attempt* to modify the mortgage accounts, BOA . . . proceeded to harass Plaintiffs with telephone calls, letters and certified letters, stating that the Plaintiffs were in arrears and that the mortgages were in foreclosure." *Id*. ¶ 47. According to Plaintiffs, "[n]one of [this] was true or factual." *Id*.

On October 7, 2008, Plaintiffs sent letters to BOA's Homeownership Retention Department "informing BOA that Plaintiffs had complied with the terms of the Letter Agreement dated September 27, 2008 by making the required payments," and to BOA's Loss Mitigation Department "regarding the failure to process the Loan Repayment Agreement based on the conditional terms set-forth in the [September 27 Letter]."  *Id*. ¶¶ 48, 49.

### 6.    **Bankruptcy order**

On October 31, 2008, the United States Bankruptcy Court for the Western District of Texas, El Paso Division, issued a "Discharge of Debtor" ("Bankruptcy Discharge") in Plaintiffs' Chapter 7 bankruptcy.  *See* SAC ¶ 26.  According to Plaintiffs, the Bankruptcy Discharge served as a Permanent Injunction and discharged all of Plaintiffs' debts.  *Id*.  The Bankruptcy Discharge states, in relevant part:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged.
> . . . .
> However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.
> . . . .
> Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed.
> . . . .
> This information is only a general summary of bankruptcy discharge.  There are exceptions to these general rules.

Bankruptcy Discharge 2, *In re: Rick Joseph Seeberger and Susan Carol Seeberger*, Case No. 07-30066-lmc (Bankr. W. D. Tex. Oct. 31, 2008), ECF No. 114.[4]

---

[4] In deciding a 12(b)(6) motion, a court may take judicial notice of matters of public record, *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994), including court orders. *See Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) ("[A] district court may take into account . . . matters of public record, orders, [and] items appearing in the record of the case."); *Davis v. Bayless*, 70 F.3d 367, 372 & n.3 (5th Cir. 1995).

**7.      First Note "charged off" and marked "Paid in Full," and Second Note "written off"**

Plaintiffs assert that the First Note was "charged off" on July 25, 2009, but they "were not notified officially until September 8, 2014."  SAC ¶ 24.  Additionally, Plaintiffs assert that in a related case, Defendants presented into evidence the First Note and Homestead Lien Contract and Deed of Trust marked "Paid in Full," on or about April 10, 2012.  FAC ¶¶ 80(a), 81.  However, "BOA has refused numerous times to release the lien associated with [the First Note]."  *Id*. ¶¶ 78(c), 80(a).  Plaintiffs note that BOA later stated that marking the Promissory Note and Deed of Trust as "Paid in Full" was a mistake.  *Id*. ¶ 80(a).  Additionally, an IRS Form 1099-C, Cancellation of Debt Income ("IRS Form 1099-C"), was issued with respect to the First Note on September 27, 2013, in the amount of $253,643.72.  SAC ¶ 24.

According to Plaintiffs, BOA also admitted that on June 25, 2009, the Second Note was "written off."  FAC ¶ 80(a).

**8.      First QWR**

Plaintiffs allege that on August 13, 2009, they sent a qualified written request ("QWR") to BOA's Loss Mitigation Department.  *Id*. ¶ 62.  According to a receipt, BOA received the QWR on August 17, 2009, yet BOA never responded to the QWR.  *Id*.  According to Plaintiffs, the QWR requested that Defendants "provide proof of ownership and possession of the Notes."  SAC ¶ 18(a).

**9.      Payment of Plaintiffs' past due property taxes**

Plaintiffs came to an agreement with the City of El Paso, Texas "regarding the payment of past due property taxes."  *Id*. ¶ 32.  The agreement established a payment plan whereby Plaintiffs would pay property taxes they owed on the Property over a specified period of time.

*Id*. ¶ 32(a).  Pursuant to the agreement, the City of El Paso would "waive a portion of the accrued interest rate, late fees and penalties," and would accept monthly payments from Plaintiffs.  *Id*.  Plaintiffs made monthly payments on a timely basis pursuant to the agreement.  *Id*.  Plaintiffs' lawyer "advised Defendants' counsel of [the] agreement," on April 29, 2010, however Defendants paid the property taxes and penalties to the City of El Paso in the amount of $32,668.78, without notifying Plaintiffs or their counsel.  *Id*. ¶ 32(a)(i).  Subsequently, according to Plaintiffs, Defendants "improperly tried to collect the delinquent taxes and penalties from Plaintiffs."  *Id*.

### 10.    Settlement Commitment Agreement

On August 12, 2011, BOA began foreclosure proceedings with a Notice of Acceleration and Sale.  FAC ¶ 69.  However, Plaintiffs and BOA agreed that BOA would forego the foreclosure because the parties had a scheduled mediation on September 28, 2011, in connection with a different case they had pending in this Court.  *Id*.

At the conclusion of the mediation on September 28, 2011, Plaintiffs and BOA entered into a Settlement Commitment Agreement.  *Id*. ¶ 71.  Plaintiffs assert that they complied with the terms, but that BOA "ignored the terms of the [Settlement Commitment Agreement] and proceeded to treat the process as a 'standard loan modification.'"  *Id*. ¶ 72.

Plaintiffs assert that beginning on January 3, 2012, they "began making principal and interest payments for [the Second Note]."  *Id*. ¶ 74.  Plaintiffs sent correspondences with these payments, "along with indorsement [sic] stipulations . . . on each check" stating that their payment was being "tendered in accordance with and satisfaction of express terms as outlined" in the attached correspondence.  *Id*.

Plaintiffs state that they sent principal and interest payments each month through June 2012, and that BOA "accept[ed] and deposit[ed] the checks and accompanying correspondence." *Id*. ¶ 75.  Plaintiffs assert, however, that Defendants "refused to honor the stipulated provisions and terms set forth in the Agreements."  *Id*. (emphasis omitted).

According to Plaintiffs, Defendants accepted payments related to the Settlement Agreement "with the representation that payments tendered would be applied to Plaintiffs['] Note as prescribed by the terms of [the] written correspondence and endorsements accompanying payments tendered."  *Id*. ¶ 36(d).

In early 2012, Plaintiffs hired "a private investor who committed to refinancing the first mortgage and made an effort to pay-off the first mortgage to BOA and secure the first lien, provide[ed] BOA release[] the second lien."  *Id*. ¶ 76.  Plaintiffs state that while BOA "was advised of the offer," it did not respond.  *Id*.  Accordingly, "the private investor's offer was withdrawn in July 2012."  *Id*.

## 11.    BOA's Consent Judgment with the federal government

Plaintiffs assert that on April 4, 2012, BOA entered into a Consent Judgment with the federal government, agreeing "to release second mortgage liens which met certain parameters." FAC ¶ 77.  According to Plaintiffs, their second mortgage lien met these parameters.  *Id*. Plaintiffs assert that as a result of the Consent Judgment, BOA "implemented a national program to release second lien mortgages," and thereafter sent letters to borrowers "informing them that they had been determined eligible for BOA's *Principal Forgiveness Program*."  *Id*. ¶ 78.

Plaintiffs include an excerpt from BOA's Press Release regarding the Principal Forgiveness Program.  *Id*. ¶ 78(a).  The Press Release states, in relevant part, that "[a]s part of Bank of America's ongoing efforts to help customers in need of mortgage assistance, this

company is in the process of mailing approximately 150,000 letters to pre-qualified homeowners offering automatic extinguishment of their second lien mortgages." *Id.*

Before December 31, 2012, Plaintiffs requested an independent mortgage review from Rust Consulting, Inc., which indicated that Plaintiffs were "eligible to receive a payment as a result of an agreement between Bank of America and federal banking regulators . . . announced in January" and that Plaintiffs would "receive a check or additional information about [their] payment." *Id.* ¶ 78(b). Nonetheless, BOA has never "offered or otherwise mentioned this remedy/relief to Plaintiffs." *Id.* 78(c).

Plaintiffs assert that because "BOA failed to follow" the Consent Judgment, BOA created a cloud over Plaintiffs' Deed of Trust. *Id.* ¶ 79. Plaintiffs assert that as a result, they were prevented from refinancing their first mortgage lien. *Id.* This "further damaged [their] financial condition, caused emotional stress, pain and suffering, and has prevented [them] from advancing their professional careers, business operations, and services to the community." *Id.*

### 12.    Sale of the Second Note and additional QWRs

Plaintiffs assert that on September 26, 2014, Defendants sold the Second Note. SAC ¶ 20. Plaintiffs assert that they received notice from Defendants that the Note "would be sold or transferred" to BSI, and received notice from BSI that the Note was sold to Ventures. *Id.* ¶ 20. Additionally, Plaintiffs assert that before, during, and after the sale of the Second Note, "Defendants had full knowledge of the status of" both Notes. *Id.* ¶¶ 22, 25.

On November 5, 2014, Plaintiffs sent QWRs to BSI and Ventures requesting that they "provide proof of ownership and possession of the Notes," but the inquiries were ignored. *Id.* ¶ 20(a).

13.    **Additional facts**

Plaintiffs state that "Defendants understated the finance charges by approximately $9,626.37." *Id.* ¶ 18; FAC ¶ 89.  Additionally, Plaintiffs assert that BANA has "created multiple layers of communication," "customer service contacts," and "legal entities being involved . . . [,] making it nearly impossible for Plaintiffs to determine how all of these parties interface or are related."  SAC ¶ 21.

Additionally, BOA sent Plaintiffs two letters dated May 1, 2014, and August 5, 2014, respectively.  *Id.* ¶ 37.  Plaintiffs allege that Defendants "made false representations and misleading statements" in these letters.  *Id.*

C.    **Plaintiffs' Requests**

Plaintiffs seek one hundred million dollars in damages, as well as quiet title and declaratory relief.  *Id.* ¶ 11.  Specifically, Plaintiffs allege that Defendants "willfully closed Plaintiffs['] mortgage accounts," caused Plaintiffs to default "under the terms of the respective promissory notes, deeds of trust and related documents," and sold the Notes to Banc of America Mortgage Securities and to Ventures.  *Id.* ¶ 12.

Plaintiffs further explain that Defendants have attempted to collect a discharged debt "and have no present right to foreclose" on the Property.  *Id.*  Plaintiffs seek to "remove encumbrances and obtain damages arising from Defendants' wrongful efforts to collect [the] previously discharged debt."  FAC ¶ 10.  Furthermore, Plaintiffs seek to require Defendants to "bring forward evidence that they are in possession of the original *Notes*."  SAC ¶ 13. According to Plaintiffs, there is no evidence that "BOA is the rightful owner" of the First and

Second Notes, "and therefore the liens and claims to the [Property] may not be valid."  FAC

¶ 21.

## II.     DISCUSSION

### A.     Motion to Dismiss

#### 1.     Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it

fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a

Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light

most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins*

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need

not contain "detailed factual allegations," it must allege sufficient facts "to state a claim to relief

that is plausible on its face."  *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th

Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).   "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks

omitted) (citation omitted).  Ultimately, the "[f]actual allegations [in the complaint] must be

enough to raise a right to relief above the speculative level."  *Id*. (citation omitted).

Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 556

(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Additionally, "when a successful

affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be

appropriate." *Kansa Reins. Co., Ltd. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th

Cir. 1994) (citing *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

    The court must hold a pro se complaint "to less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks

omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e)

("Pleadings must be construed so as to do justice.").  It is appropriate to treat a pro se petition as

one seeking the appropriate remedy, however inartfully pleaded. *Clymore v. United States*, 217

F.3d 370, 373 (5th Cir. 2000); *United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996).

However, pro se litigants are still required to provide sufficient facts in support of their claims;

mere conclusory allegations are insufficient. *See United States v. Pineda*, 988 F.2d 22, 23 (5th

Cir. 1993).

    Plaintiffs style this case as arising under TILA, TDCA, FDCPA, Texas contract law, the

duty of good faith and fair dealing, and common law fraud.  However, to the extent Plaintiffs

also attempt to assert claims under the "show-me-the-note" theory,  the "split-the-note" theory,

the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, breach of

fiduciary duty, and tortious interference, the Court addresses these claims as well.[5] *See*

*Clymore*, 217 F.3d at 373; *Robinson*, 78 F.3d at 174.

---

[5] Because this Court has diversity jurisdiction over this case, the Court applies Texas law to Plaintiffs' state law
claims. *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 237 (5th Cir. 2014) ("Except where a
matter is governed by federal law, a federal district court sitting in a diversity case has the obligation to apply the
law of the forum state." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

### 2.     TILA claims

Plaintiffs assert two causes of action against Defendants under TILA: (1) an action for actual and statutory damages, and (2) an action for rescission.  *See* SAC ¶¶ 17-25.  In support of these claims, Plaintiffs assert that "Defendants understated the finance charges by approximately $9,626.37 . . . and failed to post payments made by Plaintiffs in a timely and accurate manner," SAC ¶ 18, and that "BANA . . . created multiple layers of communication, multiple customer service contacts, multiple legal entities being involved including Defendants BAC and PRLAP; Banc of America Mortgage Securities; and . . . BSI and Ventures making it nearly impossible for Plaintiffs to determine how all of these parties interface or are related," SAC ¶ 25.

Defendants argue that Plaintiffs' TILA claim must be dismissed because (1) Plaintiffs fail to articulate any TILA violations or to outline a "short and concise set of facts" underlying the claim; (2) the claim is time-barred; and (3) Plaintiffs have not pled, and cannot show, damages. Mot. to Dismiss 8-11.

The purposes of TILA are "to assure a meaningful disclosure of credit terms" so consumers can "compare more readily the various credit terms available to [them] and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363-68 (1973)). "Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights."  *Beach*, 523 U.S. at 412 (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638); *see also Lyles v. Commercial Credit Plan Consumer Disc. Co.*, 660 F.2d 129, 130 (5th Cir. 1981) ("Congress addressed the vexatious problem of borrowers obligating themselves without an

adequate understanding of interest, charges, and penalties for default by enacting [TILA] . . . .
[which] requires a meaningful disclosure of credit terms, sufficient to enable the average
consumer to shop comparatively for credit.").

Failure to satisfy TILA's requirements "subjects a lender to . . . statutory and actual
damages traceable to a lender's failure to make the requisite disclosures."  *Beach*, 523 U.S. at
412 (citing 15 U.S.C. § 1640).  In some instances, "a borrower may assert the right to damages
'as a matter of defense by recoupment or set-off' in a collection action brought by the lender."
*Id*.  Additionally, TILA gives borrowers the right to rescind certain loans.  *See* 15 U.S.C. § 1635;
*Jesinoski v. Countrywide Home Loans, Inc.*, --- U.S. ----, 135 S. Ct. 790, 791 (2015).

### a.    Statutory and actual damages

Under § 1640(e), an action for damages "may be brought . . . within one year from the
date of the occurrence of the violation," however any action "with respect to any violation of
section 1639, 1639b, or 1639c . . . may be brought . . . before the end of the 3-year period
beginning on the date of the occurrence of the violation."[6]  15 U.S.C. § 1640(e); *see also Beach*,
523 U.S. at 412.  A violation "occurs when the transaction is consummated."  *Moor v. Travelers
Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) (internal quotation marks omitted) (citations
omitted).  A transaction "is consummated at the moment 'a contractual relationship is created
between [a creditor and a customer].'"  *Id*. (alteration in original) (citations omitted).  A
contractual relationship is created between a creditor and customer when a loan and security
instruments are executed.  *See id*. (treating date defendant loaned plaintiff money, secured by a
deed of trust on plaintiff's property, as moment credit transaction was consummated); *Allen v.
Bank of America, N.A.*, No. EP-14-CV-429-KC, 2015 WL 1726986, at *13 (W.D. Tex. Apr. 15,

---

[6] Section 1639 provides specific "[r]equirements for certain mortgages," 15 U.S.C. § 1639, and outlines "eight
disclosures which must be made in consumer credit arrangements other than open end loans," *Lyles v. Commercial
Credit Plan Consumer Disc. Co.*, 660 F.2d 129, 130 (5th Cir. 1981) (citing 15 U.S.C. § 1639).

2015) (equating date plaintiff executed note and security instrument as moment loan was consummated and accordingly, as moment of alleged TILA violation).  Refinancing a loan also creates a contractual relationship between creditor and customer.  *See Jesinoski*, 135 S. Ct. at 790 (treating date petitioners refinanced the mortgage on their home as the relevant consummated transaction).  Moreover, "[n]ondisclosure is not a continuing violation" for purposes of TILA's time limitations.  *Moor*, 784 F.2d at 633.

As Defendants point out, Plaintiffs fail to explain how any particular act or action taken by any of the Defendants amount to a specific TILA violation.  Mot. to Dismiss 8-9; *see* SAC ¶¶ 17-25.  Plaintiffs do not indicate when Defendants "understated the finance charges," "failed to post payments . . . in a timely and accurate manner," or "created multiple layers of communication," nor do they elaborate on these allegations.  *See* SAC ¶ 18-25.  Thus, the Court is left to speculate as to precisely what acts of Defendants allegedly constitute a TILA violation, and when the supposed acts occurred.  *See Washington v. Giant of Maryland LLC*, No. PWG-13-2599, 2015 WL 518573, at *2 (D. Md. Feb. 6, 2015) ("Plaintiff does not specify the date of his termination, leaving the Court to speculate as to when it was and how much time elapsed before he filed suit . . . , rather than providing the Court with 'factual content that allows that court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)).  Accordingly, the TILA claim for damages is dismissed on this ground alone.  *See Twombly*, 550 U.S. at 555 ("Factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level.").

However to the extent Plaintiffs allege that Defendants committed a TILA violation when (1) they executed the First and Second Loans, the First and Second Notes, and the accompanying security instruments on December 29, 2003; (2) BOA refinanced their First and Second Notes on

January 13, 2005; or (3) BOA failed to post payments timely and accurately after Plaintiffs took

advantage of the Budget Fitter Program in June 2006, Plaintiffs' TILA claim for damages is

time-barred.  Using any of these possible dates for the alleged violations, Plaintiffs' claim

became time-barred in December 2004 at the earliest, and in June 2009 at the latest.  *See* 15

U.S.C. § 1640(e) (providing one year and three year time limits for damages under TILA).

However, Plaintiffs filed their Complaint on October 1, 2014.  *See* Compl.  Thus, it is evident

from the face of the SAC that Plaintiffs' claim for damages under TILA is time-barred and must

be dismissed.  *See, e.g.*, *Allen*, 2015 WL 1726986, at *13 (dismissing claim for damages under

TILA as time-barred); *Moor*, 784 F.2d at 633 (affirming dismissal of claim for damages under

TILA as time-barred).

### b.        Right to rescind

Plaintiffs' TILA claim for rescission is similarly time-barred.  Under TILA, "when a loan

made in a consumer credit transaction is secured by the borrower's principal dwelling, the

borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose

important terms accurately."  *Beach*, 523 U.S. at 411 (citing 15 U.S.C. § 1635).  "However, a

borrower's right to rescind a loan is not unending; the statute provides that 'it shall expire three

years after the date of the consummation of the transaction or upon the sale of the property,

whichever occurs first.'"  *Allen*, 2015 WL 1726986, at *13 (quoting 15 U.S.C. § 1635(f)) (citing

*Beach*, 523 U.S. at 411, 413; *Lowery v. Capital One Mortg.*, 429 F. App'x 377, 378 (5th Cir.

2011); *Taylor v. Domestic Remodeling, Inc.*, 97 F.3d 96, 98 (5th Cir. 1996)).  A plaintiff must

notify the creditor of her intention to rescind within the three-year time period.  *See Jesinoski*,

135 S. Ct. at 792.

As noted above, Plaintiffs fail to explain how any action taken by any of the Defendants amounts to a violation of a particular TILA provision, and do not specify when any alleged violation occurred.  Mot. to Dismiss 8-9; *see* SAC ¶¶ 17-25.  However, to the extent Plaintiffs allege that Defendants committed a TILA violation when (1) they executed the First and Second Loans, the First and Second Notes, and the accompanying security instruments on December 29, 2003; (2) BOA refinanced their First and Second Notes on January 13, 2005; or (3) BOA failed to post payments timely and accurately after Plaintiffs took advantage of the Budget Fitter Program in June 2006, Plaintiffs' TILA claim for rescission is time-barred.  At the earliest, Plaintiffs' right to rescind expired in December 2008 and at the latest in June 2009.  *See* 15 U.S.C. § 1635 (limiting plaintiff's right to rescission to three years after TILA violation).  Plaintiffs filed their Complaint on October 1, 2014, *see* Compl., and have not have not indicated that they otherwise notified Defendants of their intention to rescind.  Thus, Plaintiffs' request for rescission is untimely.  *See Jesinoski*, 135 S. Ct. at 792.  Accordingly, Plaintiffs' claim for rescission under TILA fails as a matter of law and must be dismissed.  *See, e.g.*, *McCrimmon v. Wells Fargo Bank, NA*, 516 F. App'x 372, 375 (5th Cir. 2013) (affirming dismissal of claim for rescission under TILA as time-barred);  *Allen*, 2015 WL 1726986, at *13 (dismissing claim for rescission under TILA as time-barred).

Plaintiffs also "seek a right of rescission for recoupment claim," but fail to explain the basis for such a claim.  *See* SAC ¶ 23.  "[A] borrower may assert the right to damages 'as a matter of defense by recoupment or set-off' in a collection action brought by the lender even after the one year is up."  *Beach*, 523 U.S. at 412; § 1640(e); *see also Allen*, 2015 WL 1726986, at *13 (citing *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 187 (S.D. Tex. 2007), *aff'd* 269 F. App'x 523 (5th Cir. 2008)).  However, the right of rescission is "completely

extinguishe[d] . . . at the end of the 3-year period." *Beach*, 523 U.S. at 412. Accordingly, as explained above, Plaintiffs' "rescission for recoupment claim" is time-barred.

### 3.    TDCA claims

Plaintiffs allege that Defendants violated the TDCA, Tex. Fin. Code section 392.304(a)(8), by seeking to collect a debt that was "discharged and/or extinguished against them" in their October 31, 2008, Bankruptcy Discharge. SAC ¶ 26. In support of their TDCA claim, Plaintiffs also allege that Defendants (1) "wrote off" and/or "charged off" the First and Second Notes in July 2009; (2) prepared and produced to Plaintiffs on April 10, 2012, the First Note and Deed of Trust marked "Paid in Full," although Plaintiffs note that Defendants maintain this was a mistake; and (3) issued an IRS Form 1099-C with respect to the First Note on September 27, 2013. *See* SAC ¶ 24; FAC ¶¶ 80(a), 81. Plaintiffs also allege that "BOA's wrongful act to collect this debt . . . was intentionally committed with the malicious desire to harass, annoy and oppress the Plaintiffs." FAC ¶¶ 65, 91.

Next, Plaintiffs assert that Defendants violated Tex. Fin. Code sections 392.304(1), (3), (5)(B)(14), and (5)(B)(19), and section 392.403(1)(2) because "Defendants engaged in fraudulent, deceptive, or misleading representations in their debt collection efforts." SAC ¶ 26(b). Additionally, Plaintiffs claim that Defendants violated Tex. Fin. Code section 392.304 "by using multiple names, organizations, and accounts to reference a single debt in their collection efforts." SAC ¶ 27(a).

In moving to dismiss Plaintiffs' TDCA claim, Defendants argue that (1) the claim fails for lack of certainty; (2) Plaintiffs fail to support their allegation that their loans were discharged such that the liens are invalid and do not need to be paid; and (3) the process of foreclosing does not constitute a TDCA violation. Mot. to Dismiss 11-13.

The TDCA prohibits debt collectors from using wrongful practices in the collection of consumer debts.  *See Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986) ("[T]he Legislature passed the Debt Collection Act to prevent creditors from preying upon a consumer's fears and ignorance of the law to pursue allegedly delinquent debts." (citation omitted)); *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 135 (Tex. App. 2001).  To maintain a cause of action under the TDCA, a plaintiff must show that: (1) the defendant is a debt collector; (2) the defendant committed a wrongful act in violation of the TDCA; (3) the wrongful act was committed against the plaintiff; and (4) the plaintiff was injured as a result of the defendant's wrongful act.  *Birchler v. JPMorgan Chase Bank*, CIVIL ACTION NO 4:14-CV-81, 2015 WL 1939438, at *5 (E.D. Tex. Apr. 29, 2015); *O'Neil v. CitiMortgage, Inc.*, Civil Action No. 4:13-cv-656-O, 2014 WL 1199338, at *4 (N.D. Tex. Mar. 24, 2014).

At the outset, the Court notes that Plaintiffs do not allege how they were injured, if at all, as a result of the Defendants' wrongful acts.  Thus, Plaintiffs fail to state a claim under the TDCA on this basis alone.  *See Birchler*, 2015 WL 1939438, at *5; *O'Neil*, 2014 WL 1199338, at *4.  Nonetheless, the Court also understands Plaintiffs to be asserting specific claims under Texas Finance Code, sections 392.304(a)(1), (a)(3), (a)(5)(B), (a)(8), (a)(14), and (a)(19), and addresses the infirmities in Plaintiffs claims in turn.[7]

### a.      Section 392.304(a)(1)

Section 392.304(a)(1) prohibits debt collectors from "using a name other than the . . . true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection."  Tex. Fin. Code § 392.304(a)(1).

---

[7] Plaintiffs also allege that Defendants violated sections 392.403(1) and (2), however these provisions do not exist. Sections 392.403(a)(1) and (2), however, merely state that a person may sue for injunctive relief or for actual damages.  *See* Tex. Fin. Code §§ 392.403(a)(1)-(2).  Thus, the Court does not analyze Plaintiffs' claims under these provisions as "violations," as Plaintiffs seem to suggest.

While Plaintiffs state that Defendants used "multiple names, organizations, and accounts to reference a single debt in their collection efforts," a careful review of the SAC reveals that Plaintiffs do not allege that these "multiple names" are not the "true business or professional name[s]" of the debt collectors. *Id.* Moreover, to demonstrate Defendants' violation of section 392.304(a)(1), Plaintiffs simply state that "Defendants engaged in fraudulent, deceptive, or misleading representations in their debt collection efforts." SAC ¶ 26(b). Plaintiffs do not state specific facts, elaborate, or otherwise attempt to identify an instance where Defendants used a name other than the "true business or professional name[s] . . . of the debt collectors while engaged in debt collection," and rely instead on conclusory allegations. Accordingly, Plaintiffs' claim under section 392.304(a)(1) must be dismissed for failure to state a claim. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.").

### b.    Section 392.304(a)(3)

Section 392.304(a)(3) prohibits debt collectors from "representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer." Tex. Fin. Code § 392.304(a)(3).

To demonstrate Defendants' violation of section 392.304(a)(3), Plaintiffs simply state that "Defendants engaged in fraudulent, deceptive, or misleading representations in their debt collection efforts." SAC ¶ 26(b). Plaintiffs do not elaborate or attempt to identify an instance where Defendants "represent[ed] falsely that [they] ha[d] information or something of value for [Plaintiffs] in order to solicit or discover information about [Plaintiffs]," and rely instead on conclusory allegations. Accordingly, Plaintiffs' claim under section 392.304(a)(3) must be dismissed for failure to state a claim. *See Twombly*, 550 U.S. at 555.

### c.     Section 392.304(a)(5)

Section 392.304(a)(5) prohibits third-party debt collectors from:

> failing to disclose, except in a formal pleading made in connection with a legal action . . . that the communication is an attempt to collect a debt and that any information obtained will be used for that purpose, if the communication is the initial written or oral communication between the third-party debt collector and the debtor, . . . [or] that the communication is from a debt collector, if the communication is a subsequent written or oral communication between the third-party debt collector and the debtor.

Tex. Fin. Code §§ 392.304(a)(5)(A)-(B).

Again, to demonstrate Defendants' violation of section 392.304(a)(5), Plaintiffs simply state that "Defendants engaged in fraudulent, deceptive, or misleading representations in their debt collection efforts."  SAC ¶ 26(b).  Plaintiffs do not elaborate or attempt to identify an occasion where Defendants "failed to disclose . . . that [a] communication [was] an attempt to collect a debt" or was "from a debt collector," and rely instead on conclusory statements.  Accordingly, Plaintiffs' TDCA claim under section 392.304(a)(5) must be dismissed for failure to state a claim.  *See Twombly*, 550 U.S. at 555.

### d.     Section 392.304(a)(8)

Section 392.304(a)(8) prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  Tex. Fin. Code § 392.304(a)(8).  A plaintiff must show that the debt collector "made a misrepresentation that led her to be unaware (1) that she had a mortgage debt, (2) of the specific amount she owed, or (3) that she had defaulted."  *Rucker v. Bank of America, N.A.*, --- F.3d ----, No. 15-10373, 2015 WL 7445448, at *2 (5th Cir. Nov. 20, 2015) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)).  A misrepresentation is "an affirmative statement" by the debt collector that is "false or misleading."  *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363 (5th Cir. 2014) (internal quotation

marks omitted) (quoting *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013)); *see also Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014).

Even assuming that Defendants' actions in (1) seeking to collect a debt that was discharged against Plaintiffs through their Bankruptcy Discharge; (2) "writing off" and/or "charging off" the First and Second Notes in 2009, and notifying Plaintiffs of this between 2012 and 2014; (3) preparing and producing the First Note and Deed of Trust marked "Paid in Full" to Plaintiffs in evidence, on April 10, 2012; and (4) issuing an IRS Form 1099-C with respect to the First Note on September 27, 2013, are "misrepresentations" under the TDCA, Plaintiffs do not allege that these misrepresentations caused them to believe that (1) they did not have a mortgage debt of the specific amount they owed, or (2) they had not defaulted.

With respect to the Bankruptcy Discharge, Plaintiffs do not allege that Defendants' assertion that Plaintiffs owe money caused Plaintiffs to be unaware of their debt under the First and Second Notes. It appears that Plaintiffs actually may be arguing that the Bankruptcy Discharge and their interpretation of it, as opposed to anything Defendants did, led them to believe their debts were discharged. [8] This certainly cannot amount to a claim for misrepresentation of a debt.

Next, while Plaintiffs assert that at some point between 2012 and 2014, they became aware of the First and Second Notes being "written off" and/or "charged off," Plaintiffs appear to

---

[8] Plaintiffs argue that Defendants' "misrepresentation" is that Plaintiffs owe money under the First and Second Notes when, in fact, they do not. *See* SAC ¶ 26(a). However, based on the facts in Plaintiffs' SAC, Plaintiffs cannot establish that Defendants' assertion that Plaintiffs owe them money under the First and Second Notes is false or misleading. The plain language of the Bankruptcy Discharge does not clearly indicate that Plaintiffs' First and Second Loans were discharged. To the contrary, the plain language explicitly leaves open the possibility that Plaintiffs are still liable for these loans, and states: "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." Bankruptcy Discharge 2. Moreover, obtaining a discharge in a Chapter 7 bankruptcy "extinguishes only 'the personal liability of the debtor' . . . . [while] a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (emphasis omitted).

use this as a basis for arguing that their debts were discharged, but present no facts to indicate

that discovering the Notes were "written" or "charged off" led them to become unaware that they

owed a debt in a particular amount, or that they had defaulted.  To the extent Plaintiffs claim that

Defendants' "writing off" and "charging off" the First and Second Notes constitute assertions

that Plaintiffs' debts have been discharged, this argument is untenable because "[t]he designation

of a loan as 'written-off' or 'charged-off' is an accounting practice and does not by itself reflect

that the loan has been discharged." *Miller v. Bank One*, No. 11-97-00299-CV, 1998 WL

34194017, at *2 (Tex. App. Dec. 31, 1998) (citing *Long v. Turner,* 134 F.3d 312 (5th Cir.1998)).

Instead, "writing off" or "charging off" a debt

> merely reflects the creditor's determination at the time that none of the debt is then either
> collectible or has any likelihood of ever becoming so, . . . but it does not constitute a
> legally effective discharge or release of the indebtedness and it does not imply that the
> creditor intends to thereby legally divest himself of ownership of the debt or to legally
> preclude any further efforts to collect.

*Long v. Turner,* 134 F.3d 312, 317-18 (5th Cir. 1998).

Accordingly, Defendants did not represent to Plaintiffs that the First and Second Loans were

discharged by "writing" or "charging" them off.

Additionally, while Defendants "presented and produced" the First Note marked "Paid in

Full" into evidence in a different case, Plaintiffs also recognize that Defendants stated this

notation was a mistake.  FAC ¶ 80(a).  Plaintiffs do not allege that Defendants presenting this

evidence and stating that it was a mistake led them to believe they did not owe their debt;

instead, Plaintiffs simply state these facts, without more.

Finally, Plaintiffs fail entirely to allege that the IRS Form 1099-C, issued on September

27, 2013, led them to be unaware that they owed a debt in a particular amount or had defaulted.

To the extent Plaintiffs claim that the IRS Form 1099-C constitutes an assertion that Plaintiffs'

debts in connection with the First and Second Notes were discharged, this argument is unavailing

because "a 1099–C does not discharge debtors from liability."  *Capital One, N.A. v. Massey*, No. 4:10-CV-01707, 2011 WL 3299934, at *3 (S.D. Tex. Aug. 1, 2011); s*ee also FDIC v. Cashion*, 720 F.3d 169, 178-80 (4th Cir. 2013) (concluding "that filing a Form 1099–C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred").

Thus, because Plaintiffs fail to allege any causal link between Defendants' alleged misrepresentations and Plaintiffs' unawareness that they owed a debt in a particular amount, or that they had defaulted, Plaintiffs' fail to state a claim under section 392.304(a)(8), and the claim must be dismissed.  *See Rucker*, 2015 WL 7445448, at *3 (noting that plaintiff failed to establish elements of a Section 392.304(a)(8) claim where plaintiff "never allege[d] that BOA made her unaware of her mortgage debt . . . . [,] [and] fail[ed] to show how BOA's alleged misrepresentations misled her as to the 'specific amount' owed"); *Miller*, 726 F.3d at 723 (dismissing section 392.304(a)(8) claim for failure to state a claim because plaintiffs "always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed; (iii) and that they had defaulted," and because nothing in plaintiffs' allegations suggested that debt collector "led them to think differently with respect to the character, extent, amount, or status of their debt").

### e.       Section 392.304(a)(14)

Section 392.304(a)(14) prohibits debt collectors from "representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business."  Tex. Fin. Code § 392.304(a)(14); *see also Miller*, 726 F.3d at 724 (holding that plaintiffs stated a claim under section 392.304(a)(14) by alleging that debt collector promised to consider plaintiffs' loan

modification application before foreclosure, failed to fulfill its promise, and thereby "may have harmed [plaintiffs] by causing them . . . to decline to liquidate property or seek alternative financing before the . . . foreclosure date").

Plaintiffs merely cite section 392.304(a)(14) without elaborating or alleging any specific facts indicating that Defendants "represent[ed] falsely the status or nature of the services rendered."  Instead, Plaintiffs state that "Defendants engaged in fraudulent, deceptive, or misleading representations in their debt collection efforts."  SAC ¶ 26(b).  While conclusorily restating a cause of action fails to state a claim under *Twombly*, 550 U.S. at 555, Plaintiffs' allegations do not rise to that level; they do not even allege that Defendants "falsely represented the status or nature" of any services rendered by Defendants.  Such conclusory allegations fail to state a claim and accordingly, Plaintiffs' claim under section 392.304(a)(14) must be dismissed. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Colony Ins.*, 647 F.3d at 252 (holding that a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face" (quoting *Twombly*, 550 U.S. at 555, 570)).

### f.     Section 392.304(a)(19)

Section 392.394(a)(19) prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."  Tex. Fin. Code § 392.304(a)(19).  However, "even though [section] 392.304(a)(19) appears to be a catch-all, or residual, provision for proceeding under the TDCA," a plaintiff must allege "specific, deceptive acts or practices . . . that could constitute a violation of the provision." *Miller*, 726 F.3d at 724.  Vague references to the debt collector "using a false representation or

deceptive means to collect a debt" will not suffice to overcome dismissal under Rule 12(b)(6).
*Id.* (internal quotation marks omitted).

Again, Plaintiffs merely cite section 392.304(a)(19) without elaborating or alleging any
"specific, deceptive acts or practices" to explain how Defendants violated this provision.
Instead, Plaintiffs rely on the vague assertion that "Defendants engaged in fraudulent, deceptive,
or misleading representations in their debt collection efforts."  SAC ¶ 26(b).  Such conclusory
allegations fail to state a claim under section 392.304(a)(19) and accordingly, Plaintiffs' claim
must be dismissed.  *See Twombly*, 550 U.S. at 555.

In conclusion, Plaintiffs fail to state a claim under the TDCA.  Accordingly, their TDCA
claims are dismissed.

### 4.    FDCPA claim

In support of their FDCPA claim, Plaintiffs state that "Defendants failed to file suit or
complete a foreclosure sale thereby demonstrating no present intention to take possession of the
property thereby violating [15 U.S.C.§ 1692f(6)(B)]."  SAC ¶ 30(c)(i).  Plaintiffs appear to claim
that Plaintiffs violated 15 U.S.C. § 1692f(6)(B) because "a person must bring suit on the
following actions not later than four years after the day the cause of action accrues[:]
(a)(1) specific performance of a contract for the conveyance of real property and (a)(3) debt."
SAC ¶ 30(c)(i) & n.9.  Defendants urge the Court to dismiss the FDCPA claim because the
FDCPA does not regulate foreclosures and the claim therefore fails as a matter of law.  Mot. to
Dismiss 15-16.

One purpose of the FDCPA is "to eliminate abusive debt collection practices by debt
collectors."  15 U.S.C. § 1692(e).  The FDCPA prohibits a "debt collector" from, among other
things, using "unfair or unconscionable means to collect or attempt to collect any debt," by

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . (A) there is no present right to possession of the property . . .; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

*Id.* § 1692f(6).

The Act defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*Id.* § 1692a(6).

Furthermore, "[f]or the purpose of section 1692f(6) . . . [debt collector] also includes any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the enforcement of security interests." *Id.* However, a plaintiff must bring an action under the FDCPA "within one year from the date on which the violation occur[ed]." *Id.* § 1692k(d); *see also Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 442-43 (5th Cir. 2013).

Plaintiffs never allege that Defendants were collecting or attempting to collect a debt when they closed Plaintiffs' mortgage accounts and subsequently failed to file suit or complete a foreclosure sale, and the claim fails for this reason. Indeed, by not taking action after the mortgage account had been closed, it would seem that Defendants were not attempting to collect a debt, let alone by unfair means. Moreover, to the extent that Defendants' alleged failure to act within four years of closing Plaintiffs' mortgage accounts in August 2008 was an unfair means to collect a debt, this claim fails because it is time-barred. *See* 15 U.S.C. § 1692k(d) (imposing one year statute of limitations). Plaintiffs filed their Complaint in October 2014, more than one year after the latest the alleged FDCPA violation could have possibly occurred in August 2012. *See* Compl. Accordingly, Plaintiffs' FDCPA claim is dismissed. *See Mathurin v. Wells Fargo,*

*N.A.*, No. A-14-CA-708-SS, 2014 WL 4441963, at *2 (W.D. Tex. Sept. 9, 2014) (granting 12(b)(6) motion to dismiss FDCPA claim as time-barred).

### 5.    Texas contract claim

Plaintiffs appear to claim that Defendants are liable under breach of contract for (1) breaching the contracts under the First and Second Notes, SAC ¶ 30; (2) "den[ying] Plaintiffs the opportunity to tender payments beginning in June 2008" and closing their mortgage accounts in August 2008, *id*. ¶ 30(c); (3) "mis[leading] Plaintiffs to believe [their] payments would cure any defaults . . . but then . . . fail[ing] to honor the agreement terms associated with payments tendered," *id*. ¶ 30(c)(ii); and (4) breaching the Letter Agreement and Repayment Agreement, *id*. ¶ 34.

In response, Defendants argue that Plaintiffs (1) fail to allege the existence of a contract or any specific terms that were violated; (2) admit they unilaterally changed the terms of the only "alleged" agreement such that no valid contract exists; (3) set forth only extremely vague and convoluted assertions; (4) were not damaged by any alleged breach; and (5) cannot maintain a suit for breach of contract because they are in default.  Mot. to Dismiss 13-15.

The essential elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)).  Typically, to sustain a claim for breach of contract, a plaintiff "must identify the specific provision in the contract that was breached," and cannot rely on general allegations that the defendant is in breach of an agreement.  *Williams*, 560 F. App'x at

238 (citing *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011)); *Fannie Mae v. U.S. Prop. Solutions, L.L.C.*, Civil Action No. H-08-3588, 2009 WL 1172711, at *2 (S.D. Tex. Apr. 28, 2009) (granting defendant's motion to dismiss breach of contract claim, in part, because plaintiffs failed to assert which provision of the contract was breached by defendant and instead "alleg[ed] generally that [defendant was] in breach of the loan documents"). "Moreover, if . . . plaintiffs fail to allege they [are] current on their payments under the deed of trust, dismissal of their breach of contract claim is proper." *Williams*, 560 F. App'x at 238 (citing *Marsh v. JPMorgan Chase Bank, N.A.*, 888 F. Supp. 2d 805, 815 (W.D. Tex. 2012)).

To the extent Plaintiffs claim that Defendants breached the Homestead Lien Contract and Deed of Trust associated with the First Note, the Deed of Trust associated with the Second Note, the Letter Agreement and Repayment Agreement, or any other agreement between Plaintiffs and Defendants, Plaintiffs fail to identify any specific provision that Defendants breached. Indeed, Plaintiffs fail to allege facts from which the Court could discern how Defendants' actions constitute a breach of a particular promise or portion of the agreements. Accordingly, even assuming Plaintiffs established the existence of valid contracts, that Plaintiffs performed or tendered performance, and that Plaintiffs sustained damages, any breach of contract claim arising from the agreements Plaintiffs allude to must be dismissed. *See id.* (affirming dismissal of breach of contract claim because complaint failed to identify the provision that defendant allegedly breached); *U.S. Prop. Solutions, L.L.C.*, 2009 WL 1172711, at *2. Moreover, dismissal is appropriate because Plaintiffs also fail to allege they were current on their payments under the Deeds of Trust. *See id.* Thus, Plaintiffs' "Texas contract law" claim for breach of contract is dismissed.

### 6.        Breach of good faith and fair dealing claim

Next, Plaintiffs assert that Defendants breached their duty of good faith and fair dealing by closing Plaintiffs' mortgage accounts and refusing to accept timely, properly tendered payments, SAC ¶ 33, and by "fail[ing] in their duty" to follow "the Reaffirmation Agreement procedure," *id.* ¶ 34.  Plaintiffs also assert that PRLAP "had responsibility of ensuring the Notes were handled, serviced, transferred, [and] sold in a proper manner."  *Id.* ¶ 35.

Defendants argue that the duty of good faith and fair dealing is inapplicable to the mortgagor-mortgagee relationship, and that the duty does not exist "in the area of mortgage loans."  Mot. to Dismiss 16.

To maintain a claim for breach of the duty of good faith and fair dealing, a plaintiff must show that the common law duty exists between the parties.  *See Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App. 1998).  "Ordinarily, there is no such duty in lendor/lendee relationships."  *Id.* (citing *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)).  Similarly, "[t]he relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith," nor does the relationship between a creditor and guarantor.  *Fed. Deposit Ins. Corp v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990).  Furthermore, under Texas law, a trustee does not owe a duty of good faith and fair dealing to the mortgagor.  *Burgos v. Bank of Am., N.A.*, No. EP-13-CV-63-PRM, 2013 WL 8480675, at *4 (W.D. Tex. Aug. 19, 2013) (citing *Marsh v. Wells Fargo Bank*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011)).  However, such a relationship may still exist, but only "where a 'special relationship,' marked by a shared trust or an imbalance in bargaining power, exists."  *Vogel*, 966 S.W.2d at 753 (citing *Coleman*, 795 S.W.2d at 708-09; *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 418-20 (Tex. 1995)).

Plaintiffs cannot state a claim for breach of the duty of good faith and fair dealing because they have not established that Defendants owe them this duty.  Defendants, as either lenders, mortgagees, creditors, or trustees, owe no duty of good faith and fair dealing to Plaintiffs.  *See Vogel*, 966 S.W.2d at 753; *Coleman*, 795 S.W.2d at 709; *Burgos*, 2013 WL 8480675, at *4.  Moreover, Plaintiffs have neither argued nor pleaded any facts to indicate that they have a "special relationship" with Defendants, such that the duty of good faith and fair dealing exists among the parties.  Thus, Plaintiffs' claim for breach of the duty of good faith and fair dealing is dismissed.  *See Vogel*, 966 S.W.2d at 753 (requiring plaintiffs to show "that [a] common law duty of good faith and fair dealing exists between [the] parties); *In re Interlogic Trace, Inc.*, 37 F. App'x 91, No. 01-50715, 2002 WL 1022038, at *2 (5th Cir. May 13, 2002) (affirming dismissal of claim where "[n]o special relationship existed between the parties that would support the existence of a duty of good faith and fair dealing"); *Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421, 1424 (N.D. Tex. 1996) (granting motion to dismiss claim for breach of duty of good faith and fair dealing where plaintiff presented "no compelling facts . . . which would suggest a special relationship existed to warrant imposing . . . a duty of good faith and fair dealing").

### 7.    Common law fraud claim

Next, Plaintiffs assert a claim for common law fraud.  SAC ¶¶ 36, 37.  The Court has identified three grounds that Plaintiffs appear to allege as bases for their fraud claim.  Plaintiffs allege Defendants made false representations and misleading statements to Plaintiffs (1) with respect to "their actions to resolve the outstanding issues" concerning their First and Second Notes and corresponding loan accounts in September and October 2008; (2) in connection with the Settlement Commitment Agreement arising out of *Seeberger v. Bank of America*, EP-11-CV-

278-DCG (W.D. Tex. Oct. 28, 2011); and (3) in letters Defendants sent to Plaintiffs on May 1, 2014, and August 5, 2014.  *Id.*

Plaintiffs elaborate on their fraud claim stemming from the Settlement Commitment Agreement, stating that "Defendants have made false representations and willful omissions with respect to material facts with the knowledge of its falsity and with intent to deceive the Plaintiffs and the Plaintiffs relied on the false representations."  *Id.* ¶ 36(a).  Plaintiffs also state that Defendants "represented that payments tendered would be applied to Plaintiffs['] Note as prescribed by the terms of written correspondence and endorsements accompanying payments tendered."  *Id.* ¶ 36(d).

Defendants argue that Plaintiffs (1) have failed "to allege that Defendants made representations with the intent to deceive and with no intention of performing as represented;" (2) are attempting to contort a breach of contract claim into a tort claim; and (3) have failed to meet the heightened pleading standard required under Rule 9(b) of the Federal Rules of Civil Procedure.  Mot. to Dismiss 17-21.

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury."  *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 573 (Tex. 2001)).

Moreover, "[w]hen a plaintiff brings a state law fraud claim in federal court, she must satisfy the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b)." *Allen*, 2015 WL 1726986, at *15 (citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010)); *see also* Fed. R. Civ. P 9(b) (requiring a party alleging fraud to "state with particularity the circumstances constituting fraud"). "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false misrepresentation, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

Apart from the conclusory statements that "Defendants have made false representations and willful omissions with respect to material facts with the knowledge of its falsity and with intent to deceive the Plaintiffs and the Plaintiffs relied on the false representations," SAC ¶ 36(a), Plaintiffs fail entirely in alleging specific facts that establish a fraud claim, not to mention the heightened pleading standard under Federal Rule of Civil Procedure 9(6). Most glaringly, Plaintiffs fail to state facts demonstrating that Defendants made any representations knowing they were false or made representations recklessly; that Defendants made these representations intending that Plaintiffs act on them; that Plaintiffs relied on any representations; and that these representations caused Plaintiffs injury. Plaintiffs fail to state a fraud claim and accordingly, the claim must be dismissed. *See Shandong Yinguang Chem. Indus. Joint Stock Co.*, 607 F. 3d at 1032-33, 1035-36.

In the SAC, Plaintiffs also provide a list in Paragraphs 37(a)(i) – (b)(iii) of "false" and "misleading" representations. For example, Plaintiffs state:

i) MISLEADING: Defendants failed to acknowledge and adhere to Plaintiffs' Chapter 7 bankruptcy discharge and Permanent Injunction from October 31, 2008 thus misleading anyone reading the correspondence to belief [sic] a debt was still owed;

(ii) MISLEADING: Defendants failed to mention payments tendered by Plaintiffs associated with three separate agreements;

(iii) FALSE REPRESENTATION AND MISLEADING: Defendants failed to mention that Plaintiffs were not provided with the proper Reaffirmation procedure entitled to them under federal statute

SAC ¶ 37(a)(i)-(iii).

The Court is at a loss to decipher how any facts on the list could amount to fraud, and Plaintiffs fail entirely to allege any facts establishing the elements of a fraud claim. Thus, to the extent Plaintiffs argue that the facts listed in the SAC are fraud claims, these claims are also dismissed.

### 8.   "Show-me-the-note" theory

To the extent Plaintiffs attempt to assert a claim under the "show-me-the-note" theory, their claim must be dismissed. Plaintiffs seek declaratory relief and assert that Defendants "have no present right to foreclose on Plaintiffs' homestead." SAC ¶ 12. Plaintiffs elaborate that defendants "have a common law duty to bring forward evidence that they are in possession" of the First and Second Note. SAC ¶¶ 13, 18(a)(i), 18(a)(iii). The Court understands Plaintiffs to be asserting what is colloquially known as the "show-me-the-note" theory, which "stems from its advocates' belief that 'only the holder of the original wet-ink signature note has the lawful power to initiate a nonjudicial foreclosure.'" *Allen*, 2015 WL 1726986, at *5 (quoting *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 757 (N.D. Tex. 2013) (internal quotation marks omitted) (citation omitted)). "This theory has been 'roundly rejected' in Texas, and it fares no better when applied to the facts of the instant case." *Id.* (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013)).

The Fifth Circuit has held that "[t]he original, signed note need not be produced in order to foreclose." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-54 (5th Cir. 2013). The Fifth Circuit has consistently "reaffirmed its unequivocal rejection of the 'show-me-the-note' theory each time it has surfaced on appeal." *Allen*, 2015 WL 1726986, at *5 (citing Fifth Circuit cases rejecting "show-me-the-note" theory). To the extent Plaintiffs assert a "show-me-the-note" claim, their claim must be dismissed "[b]ecause there is simply no requirement in Texas that a foreclosing party must produce the original note in order to foreclose." *Id*. (citing *Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 274 (5th Cir. 2014)).

### 9. "Split-the-note" theory

To the extent Plaintiffs attempt to assert a claim under the "split-the-note" theory, their claim must be dismissed. Plaintiffs appear to seek a declaratory judgment that Defendants "have no present right to foreclose on Plaintiffs' homestead," SAC ¶ 12, asserting that BOA split the First BOA Note from its Homestead Lien Contract and Deed of Trust, and the Second Note from its Deed of Trust, SAC ¶ 18(a)(ii); FAC ¶ 20. While Plaintiffs do not elaborate on this claim, the Court understands their argument to be that BOA split the First and Second Notes when it "either sold, transferred, assigned and securities the Notes through Banc of America Mortgage Securities, Inc.," thus rendering any assignment of the Notes void. *See Allen*, 2015 WL 1726986, at *6 (citing *Martins*, 722 F.3d at 254; *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 927 (N.D. Tex 2014)).

Like the "show-me-the-note" theory, the Fifth Circuit has repeatedly rejected the "split-the-note" theory "as inapplicable in Texas." *Id*. at *7 (citing *Wiley v. Deutsche Bank Nat. Trust Co.*, 539 F. App'x 533, 536-37 (5th Cir. 2013); *Martins*, 722 F.3d at 255; *Rojas v. Wells Fargo*

*Bank, N.A.*, 571 F. App'x 274, 278 (5th Cir. 2014); *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d

338, 342 (5th Cir. 2013)).  Thus, to the extent Plaintiffs suggest, through a "split-the-note"

theory, that they are entitled to declaratory relief establishing that Defendants have no right to

foreclose, Plaintiffs' claim fails as a matter of law.  *See id*.

> **10.    RESPA claim**

To the extent Plaintiffs attempt to assert a RESPA claim in their SAC, this claim must be

dismissed.  Plaintiffs argue that Defendants violated RESPA by failing to acknowledge receipt of

their First QWR in August 2009, and "to either remove any past due mortgage payments or

provide a detailed explanation as to why the charges are being made."  FAC ¶ 62.  Therefore,

Plaintiffs conclude, "Defendants should be required to pay Plaintiff's [sic] damages."  *Id.* ¶ 62.

Congress enacted RESPA "to insure that consumers throughout the Nation are provided

with greater and more timely information on the nature and costs of the settlement process and

are protected from unnecessarily high settlement charges caused by certain abusive practices that

have developed in some areas of the country."  12 U.S.C §  2601(a).  Section 2605(e)

> provides that if a loan servicer receives a qualified written request from the borrower for
> information relating to the servicing of her loan, the loan servicer must send a written
> response acknowledging receipt of the correspondence within five days, unless the
> requested action is taken before the five-day period expires.

*Allen*, 2015 WL 1726986, at *11 (citing 12 U.S.C. § 2605(e)(1)(A)).

"Additionally, RESPA requires that the loan servicer take corrective action or otherwise

substantively respond to the borrower's inquiry within thirty days of receiving the qualified

written request."  *Id*. (citing 12 U.S.C. § 2605(e)(2)).  To state a viable claim under § 2605(e), a

plaintiff must plead "that their correspondence met the requirements of a [QWR], that

[Defendants] failed to make a timely response, and that this failure caused them actual damages."

*Williams*, 560 Fed. App'x at 241 (citing 12 U.S.C. §§ 2605(e), (f); *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012)).

Assuming that Plaintiffs have pled sufficient fact to establish that their correspondences met the statutory requirements of a QWR, Plaintiffs fail entirely to allege any facts indicating that Defendants' failure to respond caused them actual damages.  Instead they merely declare that "Defendants should pay Plaintiff's [sic] damages."  Accordingly, to the extent Plaintiffs attempt to assert a RESPA claim, that claim is dismissed.  *See Williams*, 560 F. App'x at 241.

### 11.    Breach of fiduciary duty claim

To the extent Plaintiffs attempt to pursue a claim against Defendants, and specifically against PRLAP as trustee, for breach of fiduciary duty, *see* SAC ¶¶ 20(b), 31, 35(b), 37, these claims fail as a matter of law and must be dismissed.  "Under Texas law, the elements of a cause of action for breach of fiduciary duty are: (1) that the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiffs; and (3) the defendant's breach resulted in injury to the plaintiff."  *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 176, 192 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008) (citing *Jones v. Blume*, 196 S.W.2d 440, 447 (Tex. App. 2006)).  Plaintiffs cannot meet these elements because "Texas courts have held that the relationship between a borrower and lender is not a fiduciary one."  *Id.* (citing *1001 McKinney Ltd. v. Credit Suisse First Box. Mortg Capital*, 192 S. W. 3d 20, 36 (Tex. App. 2005); *Mfrs.' Hanover Tr. Co. v. Kingston Inv'rs Corp.*, 819 S.W.2d 607, 610 (Tex. App. 1991)); *see also Allen*, 2015 WL 1726986, at *15; *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 626 (S.D. Tex. 2010) ("Texas law does not recognize a fiduciary relationship between a borrower and a lender.").  The relationship between a trustee and a mortgagor is not a fiduciary one either.  *Burgos*, 2013 WL 8480675, at *4.  Thus, to the extent

Plaintiffs attempt to pursue claims for breach of fiduciary duty against Defendants, those claims are dismissed. *See Allen*, 2015 WL 1726986, at *15.

### 12.    Tortious interference claim

Buried in Paragraph 32 of the SAC, under Plaintiffs' "Third Cause of Action . . . Claims for Violation of the FDCPA and Texas Contract Law," Plaintiffs state that "Defendant BANA tortuously [sic] interfered with a separate matter related to the [Property]" when it paid Plaintiffs' past due property taxes and penalties to the City of El Paso despite knowing that Plaintiffs had reached an agreement with the City regarding a payment plan. SAC ¶ 32. According to Plaintiffs, Defendants then "improperly tried to collect the delinquent taxes and penalties from Plaintiffs." *Id*. ¶ 32(a)(i). To the extent Plaintiffs attempt to pursue a claim for tortious interference with contract, this claim is dismissed for failure to state a claim.

"Under Texas law, the elements of a claim for tortious interference with contract are: (1) a contract subject to interference; (2) the defendant's act of interference was willful and intentional; (3) the defendant's intentional act was a proximate cause of the plaintiff's damage; and (4) actual damage or loss occurred." *5636 Alpha Rd. v. NCNB Texas Nat. Bank*, 879 F. Supp. 655, 662 (N.D. Tex. 1995) (citing *Personal Preference Video, Inc. v. Home Box Office, Inc.,* 986 F.2d 110, 111 (5th Cir.1993)). "The plaintiff must present evidence that a contract provision was breached." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 674-75 (S.D. Tex. 2010) (citing *N.Y. Life Ins. Co. v. Miller,* 114 S.W.3d 114, 125 (Tex. App. 2003); *Archives of Am., Inc. v. Archive Litig. Servs., Inc.,* 992 S.W.2d 665, 667–68 (Tex. App. 1999)). Moreover, "a plaintiff must show that the defendant took an active part in persuading a party to breach its contract . . . .[;] [m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a

breach." *Settlement Funding LLC v. RSL Funding, LLC*, 3 F. Supp. 3d 590, 607-08 (S.D. Tex. 2014).

While Plaintiffs allege that Defendants were aware they had reached an agreement with the City of El Paso regarding paying their delinquent property taxes and penalties, and that Defendants subsequently paid the delinquent property taxes and penalties to the City of El Paso, Plaintiffs fail to allege that Defendants acted willfully or intentionally, or took an active part in persuading the City of El Paso to breach its contract with Plaintiffs. *See Settlement Funding LLC*, 3 F. Supp. 3d at 607-08. Plaintiffs also fail to allege facts or explain how or whether Plaintiffs suffered any actual damage or loss. *See 5636 Alpha Rd*, 879 F. Supp. at 662. Thus, Plaintiffs fail to state a claim for tortious interference. Accordingly, to the extent Plaintiffs attempt to pursue such a claim, it is dismissed.

### 13. Equitable action to quiet title

Plaintiffs repeatedly assert, without elaboration, that they are seeking to quiet title. *See, e.g.*, SAC ¶¶ 31(b), 33(a), 34, 35(a) and (d), 36(a). "A suit to quiet title is an equitable cause of action to remove a cloud from the title of a property created by an invalid claim." *Allen*, 2015 WL 1726986, at *9 (citing *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. 2009)). To prevail in a suit to quiet title, "a plaintiff must establish that: (1) she has an interest in a specific property, (2) the title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Id*. (citing *Hurd*, 880 F. Supp. 2d at 766). Moreover, "[a] plaintiff . . . must prove and recover on the strength of [her] own title, not the weakness of [her] adversary's title." *Id*. (internal quotation marks omitted) (citations omitted).

Plaintiffs do not allege that they are current on their mortgage payments. Moreover, instead of alleging facts establishing that they have superior title to the Property, Plaintiffs argue

generally that Defendants lack authority to enforce the Notes and to foreclose on the Property. Thus, Plaintiffs' claim to quiet title is dismissed for failure to state a claim. *See Herrera v. Wells Fargo Bank, N.A.*, Civil Action No. H-13-68, 2013 WL 961511, at *9 (S.D. Tex. Mar. 12, 2013) (holding that plaintiff failed to state a claim to quiet title because plaintiff did not deny falling behind on his mortgage payments, and because"[t]he gravamen of his argument that Wells Fargo lacks authority to enforce the Note and foreclose on the property is not relevant to nor does it support a claim to quiet title"); *Allen*, 2015 WL 1726986, at *9 (dismissing claim to quiet title where plaintiff did not allege she was current on her mortgage payments or deny defaulting on the note).

### 14.   Leave to Amend

Having dismissed Plaintiffs' federal and state causes of action, the Court must determine whether to grant Plaintiffs an opportunity to amend their claims.  When a court dismisses one or more of a plaintiff's claims pursuant to Rule 12(b)(6), the court generally should give the plaintiff an opportunity to amend the complaint.  *See Hart v. Bayer Corp.*, 199 F.3d 239, 247-48 n.6 (5th Cir. 2000).  However, "[t]he court may deny leave to amend . . . if the defects are incurable or the plaintiffs have already alleged their best case." *Pierce v. Hearne Indep. Sch. Dist.*, No. 14-50788, 2015 WL 81995, at *5 (5th Cir. Jan. 7, 2015) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

After due consideration, the Court is of the opinion that Plaintiffs should be denied another opportunity to amend their complaint.  Plaintiffs have already put forth three versions of their Complaint from October 2014 to February 2015, *see* Compl.; FAC; SAC, and have been involved in at least three other cases before this Court, as well as a related case in the U.S.

Bankruptcy Court for the Western District of Texas, since 2009, stemming from the same or similar set of facts, *see* Notice of Rel. Cases.  At this point, Plaintiffs have already alleged their best case, with ample opportunity to amend, and further amendments would be futile.  *See, e.g.*, *Turner v. AmericaHomeKey Inc.*, 514 F. App'x 513, 517 (5th Cir. 2013) (affirming district court's decision to deny plaintiff leave to amend where district court had already granted plaintiff leave to amend, and where granting leave to amend was unnecessary because plaintiff already alleged his best case); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139, 142 (5th Cir. 1993) (noting that "[i]n deciding whether to grant leave to file an amended pleading, the district court may consider such factors as undue delay, . . . dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment," and holding that district court did not abuse its discretion in denying leave to file second amended complaint); *Brown v. Bd. of Trs. Sealy Indep. Sch. Dist.*, No. 11-cv-1755, 2012 WL 3069844, at *4 (S.D. Tex. Jul. 27, 2012) (denying leave for plaintiff to file second amended complaint because amended complaint would be futile).

### B.    Plaintiffs' Motion for Judgment

Turning to Plaintiffs' Motion for Judgment, Plaintiffs appear to dispute the Court's denial of Plaintiffs' Motion for Partial Summary Judgment, ECF No. 52, which was filed on March 9, 2015, as moot.  *See* Order, ECF No. 83.  Plaintiffs appear to argue that this Court should grant Plaintiffs' Motion for Partial Summary Judgment because Defendants did not respond to Plaintiffs' Motion.  *See* Motion for Judgment 8.

Plaintiffs' request is misguided because Defendants' failure to respond does not entitle Plaintiffs to a default judgment, *see Slack v. Baker*, Civil Action No. 6:09cv72, 2011 WL 830646, at *1 (E.D. Tex. Mar. 2, 2011) (adopting magistrate court's ruling that "failure of a

nonmovant to respond to a motion for summary judgment does not entitle the movant to a default judgment"), or to a ruling in their favor on the motion, *see Hooks v. Hillite Industries Inc.*, No. 3:00-CV-2358-X (N.D. Tex. Apr. 25, 2001), 2001 WL 432623, at *1 ("When the nonmoving party fails to respond to the motion for summary judgment . . . , the court may not grant summary judgment on this basis alone.).  Moreover, although the Motion for Partial Summary Judgment was filed three days after Plaintiffs filed the SAC on March 6, 2015, *see* SAC; Motion for Partial Summary Judgment, the Motion refers only to the FAC, which was no longer the operative complaint in the case, as Plaintiffs had filed a SAC.  *See* Order 10, ECF No. 83.  Thus, Plaintiff's Motion for Judgment is **DENIED**.

> **C.**   **Plaintiffs' New Motion for Partial Summary Judgment, Defendants' Motions to Strike, and Plaintiffs' Reply and Objection**

Because Plaintiffs' SAC is dismissed for failure to state a claim, Plaintiffs' New Motion for Partial Summary Judgment, Defendants' Motions to Strike, and Plaintiffs' Reply and Objection, are **DENIED** as moot.

## III.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 84, is **GRANTED**.  Accordingly, Plaintiffs' claims are **DISMISSED** *in toto*.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Judgment, ECF No. 101, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's New Motion for Partial Summary Judgment, ECF No. 112, and Defendants' Motions to Strike, ECF No. 114 and ECF No. 117, are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Reply and Objection, ECF No. 118, is **DENIED** as moot.

**SO ORDERED**.

**SIGNED this 16th day of December, 2015.**

**KATHLEEN CARDONE**
**UNITED STATES DISTRICT JUDGE**